UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
-------------------------------------------------------------------X

DUSHANNE ASHLEY,

                    Plaintiff,

       -against-

THE CITY OF NEW YORK, DETECTIVE
JASON JONES, shield #6490, DETECTIVE
MIKE CIVIL, shield #2114, SERGEANT LUKE
DENESOPOLIS, shield #392, and POLICE
OFFICER JANE/JOHN DOE(S) #'S 1-10,

                  Defendants.
-------------------------------------------------------------------X

**MEMORANDUM & ORDER
14-CV-5559 (NGG) (SMG)**

NICHOLAS G. GARAUFIS, United States District Judge.

      Plaintiff Dushanne Ashley brings this action pursuant to 42 U.S.C. § 1983 against

Defendants the City of New York (the "City"), Sergeant Luke Denesopolis, Detectives Mike

Civil and Jason Jones, and Police Officers Jane/John Doe(s) #1-10. (Am. Compl. (Dkt. 14).)

Plaintiff's lawsuit arises from his arrest on April 19, 2013, and subsequent prosecution for

criminal possession of marijuana. He asserts the following causes of action against Defendants:

(1) false arrest; (2) malicious prosecution; (3) failure to intervene; (4) illegal strip search; (5)

excessive pre-arraignment detention; and (6) denial of a fair trial.

      Defendants moved for summary judgment on all claims. (Defs. Mot. for Summ. J.

("Defs. Mot.") (Dkt. 39).) Plaintiff opposes Defendants' motion and cross-moves for partial

summary judgment on his false arrest and denial of a fair trial claims. (Pl. Cross-Mot. for

Summ. J. ("Pl. Mot.") (Dkt. 43).) The court referred Defendants' motion for summary judgment

("Defendants' Motion") and Plaintiff's cross-motion for partial summary judgment ("Plaintiff's

Motion" and together with Defendants' Motion, the "Cross-Motions") to Magistrate Judge

Steven L. Gold for a Report and Recommendation ("R&R") pursuant to 28 U.S.C.

§ 636(b)(1)(B) and Federal Rule of Civil Procedure 72(b)(1). (Nov. 28, 2016, Order Referring Mot.) On April 17, 2017, Judge Gold issued an R&R, recommending that Defendants' Motion be granted in part and denied in part and that Plaintiff's Motion be denied. (R&R (Dkt. 59) at 2.) Plaintiff and Defendants each filed timely objections to the R&R. (Defs. Objs. to R&R ("Defs. Objs.") (Dkt. 64); Pl. Objs. to R&R ("Pl. Objs.") (Dkt. 65).)

For the following reasons, Plaintiff and Defendants' objections are OVERRULED. The R&R is ADOPTED IN FULL. Defendants' Motion is GRANTED IN PART and DENIED IN PART. Plaintiff's Motion is DENIED.

## I.    BACKGROUND

The court provides a short summary of the facts pertinent to the Cross-Motions for summary judgment.[1] Except as otherwise indicated, the facts in this section are not in dispute.

On November 28, 2012, Plaintiff was arrested by Jones inside of 125 East 18th Street, Apartment 5I, Brooklyn, New York (the "Apartment") for criminal possession of marijuana. (Defs. R. 56.1 Statement ("Defs. 56.1") (Dkt. 40) ¶ 6.) Civil was also present for the arrest. (Id. ¶ 8.) The criminal complaint for this arrest states that Plaintiff lives at the Apartment and "stays" in the living room. (Id. ¶ 9.) On the day of the arrest, a blow-up bed was present in the living room of the Apartment. (Id. ¶ 10.)

On December 13, 2012, Plaintiff was again arrested in the Apartment for criminal possession of marijuana. (Id. ¶¶ 13-14.) Although Civil was not the arresting officer, he was present for the arrest. (Id. ¶ 15.) The criminal complaint for this incident states that on December 28, 2012, Plaintiff resided at the Apartment. (Id. ¶ 16.)

---

[1] The facts are set forth in greater detail in Judge Gold's R&R. (See R&R at 2-5.)

On April 19, 2013, Defendant Civil executed a search warrant at the Apartment.[2] (Defs. 56.1 ¶ 20.) The search warrant listed the address of the Apartment and the name of one individual, Charles Patrick. (Pl. R. 56.1 Statement ("Pl. 56.1") (Dkt. 44) ¶ 2.) Plaintiff was not named on the search warrant and alleges that he did not reside at the Apartment on April 19, 2013. (Id. ¶¶ 9, 13.)

Upon entering the Apartment on April 19, 2013, Civil observed two individuals, Charles Patrick and Jose Carlos. (Defs. 56.1 ¶ 22.) During his search, Civil found 18 small plastic bags of marijuana in the living room of the Apartment. (Id. ¶ 23.) Several of Plaintiff's possessions, including compact discs, a cat, and a dog, were in the Apartment. (Id. ¶ 29.) Defendants allege that "due to his prior involvement with plaintiff and [the] [A]partment," Civil "believed that the room where the marijuana was found was [Plaintiff's] room." (Id. ¶ 24.) Plaintiff denies this allegation. (Pl. R. 56.1 Counter Statement ("Pl. 56.1 Counter Statement") (Dkt. 45) ¶ 24.)

Plaintiff was not present at the Apartment when the search was conducted but he arrived shortly thereafter while officers were still in the Apartment and was placed under arrest. (Defs. 56.1 ¶¶ 27-28, 32-33.) Plaintiff was then transported to the police precinct where he alleges he was subjected to a strip search. (Id. ¶ 34-35.) Plaintiff was in custody for approximately 35 hours following his arrest. (Id. ¶ 38.)

Plaintiff was charged in state court with Criminal Possession of Marijuana in the Fourth Degree, Criminal Possession of Marijuana in the Fifth Degree, and Unlawful Possession of Marijuana. (Id. ¶ 39.) The criminal complaint (the "Original Complaint"), which was signed by Civil, inaccurately stated that, at the time the marijuana was discovered, Civil observed Plaintiff

---

[2] Jones was not present at the Apartment. (Id. ¶ 21.) Denespolis does not recall assisting Civil with the search of the Apartment. (Ex. 3 to Zelman Decl. in Supp. of Pl. Objs. ("Denespolis Dep. Tr.") (Dkt. 66-3) 6:9-7:10.) Moreover, Plaintiff does not know who Denesopolis is and cannot place him at the Apartment on April 19, 2013. (Defs. 56.1 ¶ 47.)

and his co-defendant Carlos sitting in the room where the marijuana was recovered. (Id. ¶ 40-42.) The prosecution filed a superseding information (the "Superseding Complaint") to correct this error. (Id. ¶ 43.) The Superseding Complaint included the same charges as the Original Complaint but stated that Plaintiff entered the Apartment only after the search was conducted and added that upon his arrival, Plaintiff made the following statement: "this is what happens when you let strange people into our apartment." (Id. ¶ 44.) Plaintiff denies having said this. (Pl. 56.1 ¶ 27.) Plaintiff was required to make a number of court appearances in relation to the Original and Superseding Complaint. (Id. ¶ 28-30.)

On July 18, 2014, the charges stemming from Plaintiff's April 19, 2013, arrest were dismissed by the state court. (Defs. 56.1 ¶ 45.) Defendant asserts that the charges were dismissed due to "facial insufficiency" of the Superseding Complaint. (Id. ¶ 46.) Plaintiff counters that the charges were "dismissed on the merits" and in dismissing the charges, the state court just "happened to refer to the Superseding Criminal Court Complaint as facially insufficient." (Pl. 56.1 Counter Statement ¶ 46.)

## II.    LEGAL STANDARDS

### A.  Review of R&R

In reviewing an R&R regarding a dispositive matter from a magistrate judge, the district court "may adopt those portions of the Report to which no objections have been made and which are not facially erroneous." Romero v. Bestcare Inc., No. 15-CV-7397 (JS) (GRB), 2017 WL 1180518, at *2 (E.D.N.Y. Mar. 29, 2017) (internal citation omitted); see Impala v. U.S. Dep't of Justice, 670 F' App'x 32, 32 (2d Cir. 2016) (summary order) ("[F]ailure to object timely to a magistrate's report operates as a waiver of any further judicial review of the magistrate's decision . . . ." (internal citation omitted)); Gesualdi v. Mack Excavation & Trailer Serv., Inc.,

4

No. 09-CV-2502 (KAM) (JO), 2010 WL 985294, at *1 (E.D.N.Y. Mar. 15, 2010) ("Where no objection to the [R&R] has been filed, the district court need only satisfy itself that there is no clear error on the face of the record." (internal quotation marks and citation omitted)). "A decision is 'clearly erroneous' when the Court is, 'upon review of the entire record, left with the definite and firm conviction that a mistake has been committed.'" DiPilato v. 7-Eleven, Inc., 662 F. Supp. 2d 333, 339-40 (S.D.N.Y. 2009) (quoting United States v. Snow, 462 F.3d 55, 72 (2d Cir. 2006)).

The district court must review de novo "those portions of the report . . . to which objection is made." 28 U.S.C. § 636(b)(1). To obtain this de novo review, however, an objecting party "must point out the specific portions of the [R&R] that they are objecting to." Sleepy's LLC v. Select Comfort Wholesale Corp., 222 F. Supp. 3d 169, 174 (E.D.N.Y. 2016); see also Fed. R. Civ. P. 72(b)(2) ("[A] party may serve and file specific written objections to the [R&R]."). If a party "makes only conclusory or general objections, or simply reiterates his original arguments, the Court reviews the [R&R] only for clear error." Pall Corp. v. Entegris, Inc., 249 F.R.D. 48, 51 (E.D.N.Y. 2008) (citations omitted); see also Mario v. P&C Food Mkts., Inc., 313 F.3d 758, 766 (2d Cir. 2002) (holding that plaintiff's objection to an R&R was "not specific enough" to "constitute an adequate objection under . . . Fed. R. Civ. P. 72(b)").

**B. Summary Judgment**

Summary judgment must be granted when "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). "A 'material' fact is one capable of influencing the case's outcome under governing substantive law, and a 'genuine' dispute is one as to which the evidence would permit a reasonable juror to find

for the party opposing the motion." Figueroa v. Mazza, 825 F.3d 89, 98 (2d Cir. 2016) (citing

Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986)).

The moving party bears the initial burden to show an absence of genuine factual dispute.

See Adickes v. S.H. Kress & Co., 398 U.S. 144, 157 (1970). Summary judgment will be granted

if the opposing party then "fails to make a showing sufficient to establish the existence of an

element essential to that party's case, and on which that party will bear the burden of proof at

trial." Celotex Corp. v. Catrett, 477 U.S. 317, 322 (1986). To defeat summary judgment, the

opposing party must do more than demonstrate "some metaphysical doubt as to the material

facts," Matsushita Elec. Indus. Co., Ltd. v. Zanith Radio Corp., 475 U.S. 574, 586 (1986), and

may not rely on "conclusory allegations." Twin Labs., Inc. v. Weider Health & Fitness,

900 F.2d 566, 568 (2d Cir.1990); see Joseph v. N. Shore Univ. Hosp., 473 F. App'x 34, 36

(2d Cir. 2012) (summary order) ("Conclusory allegations, conjecture, and speculation, . . . are

insufficient to create a genuine issue of fact." (quoting Shannon v. N.Y. City Transit

Auth., 332 F.3d 95, 99 (2d Cir. 2003)). "[T]he Court 'must construe the facts in the light most

favorable to the non-moving party and must resolve all ambiguities and draw all reasonable

inferences against the movant.'" Fireman's Fund Ins. Co. v. Great Am. Ins. Co. of N.Y.,

822 F.3d 620, 631 n.12 (2d Cir. 2016) (quoting Beyer v. Cty. of Nassau, 524 F.3d 160, 163

(2d Cir. 2008)).

## III.  DISCUSSION

In issuing his recommendations on the Cross-Motions, Judge Gold first considered

Plaintiff's six claims against the individual Defendants one by one, and then separately addressed

Plaintiff's claims for municipal liability.  This decision is organized in the same manner.

## A. False Arrest

### 1. Legal Standard

Claims for false arrest under Section 1983 "are analyzed pursuant to the same standards as the applicable state law's false arrest tort." Nzegwu v. Friedman, 605 F. App'x 27, 29 (2d Cir. 2015) (summary order) (citing Jocks v. Tavernier, 316 F.3d 128, 134 (2d Cir. 2003)). To prevail on a false arrest claim under New York law, "a plaintiff must show that (1) the defendant intended to confine him, (2) the plaintiff was conscious of the confinement, (3) the plaintiff did not consent to the confinement and (4) the confinement was not otherwise privileged." Id. (quoting Jocks, 316 F.3d at 134-35).

"The existence of probable cause to arrest constitutes justification and is a complete defense to an action for false arrest." Gonzalez v. City of Schenectady, 728 F.3d 149, 155 (2d Cir. 2013) (quoting Weyant v. Okst, 101 F.3d 845, 852 (2d Cir. 1996)). "Probable cause to arrest exists when the authorities have knowledge or reasonably trustworthy information sufficient to warrant a person of reasonable caution in the belief that an offense has been committed by the person to be arrested." Schwartz v. Marcantonatos, 567 F. App'x 20, 22 (2d Cir. 2014) (summary order) (quoting Lennon v. Miller, 66 F.3d 416, 424 (2d Cir. 1995)). "The question of whether or not probable cause existed may be determinable as a matter of law if there is no dispute as to the pertinent events and the knowledge of the officers." Weyant, 101 F.3d at 852.

Moreover, "under both New York and federal law, summary judgment dismissing a plaintiff's false arrest claim is appropriate if the undisputed facts indicate that the arresting officer's probable cause determination was objectively reasonable," entitling an officer to qualified immunity. Jenkins v. City of N.Y., 478 F.3d 76, 87-88 (2d Cir. 2007). "An officer's

determination is objectively reasonable if there was 'arguable' probable cause at the time of arrest—that is, if 'officers of reasonable competence could disagree on whether the probable cause test was met.'" Id. at 87 (quoting Lennon v. Miller, 66 F.3d 416, 423-24 (2d Cir. 2005)).

A person is guilty of criminal possession of marijuana in the fourth degree when he "knowingly and unlawfully possesses" more than two ounces of marijuana. N.Y. Penal Law § 221.15. A person is guilty of criminal possession of marijuana in the fifth degree when he "knowingly and unlawfully possesses" more than 25 grams of marijuana. Id. § 221.10. Finally, a person is guilty of the lesser charge of unlawful possession of marijuana when he "knowingly and unlawfully possesses" marijuana. Id. § 221.05. To "possess" marijuana means to "have physical possession or otherwise exercise dominion or control" over the marijuana. Id. § 10.00(8). Knowing possession of marijuana (or other contraband) can be inferred where an individual has "dominion or control" over the area where the drugs are found. Chalmers v. Mitchell, 73 F.3d 1262, 1272 (2d Cir. 1996) (discussing N.Y. Penal Law § 10.00(8)).

2. Analysis

Plaintiff and Defendants have each moved for summary judgment on Plaintiff's false arrest claim. (See Defs. Mem. in Supp. of Defs. Mot. ("Defs. Mem.") (Dkt. 42) at 5-12; Pl. Mem. in Supp. of Pl. Mot. and in Opp'n to Defs. Mot. (Dkt. 46) ("Pl. Mem.") ¶¶ 11-15.) Judge Gold determined that there was probable cause for Plaintiff's arrest and therefore recommends that the court grant summary judgment in favor of Defendants on this count. (R&R at 8-9.) He noted that even if the court were to find that there was not probable cause to arrest Plaintiff, the individual Defendants would be entitled to qualified immunity because there was at least arguable probable cause to make the arrest. (Id. at 11.)

Plaintiff objects to this portion of the R&R, arguing that there is a genuine dispute of material fact as to whether the arresting officer, Civil, was "in possession of sufficient facts which would lead a reasonable police officer to believe there was probable cause to arrest Plaintiff." (Pl. Objs. at 7.) In Plaintiff's view, Judge Gold "engaged in improper and unfounded judicial-fact finding in favor of the [Defendants]" where he attributed knowledge of certain facts to Civil. (Id. at 8.)

The court reviews this portion of the R&R de novo. See 28 U.S.C. § 636(b)(1). The relevant question is whether there exists a genuine dispute of material fact as to what Civil knew at the time of the arrest. At his deposition, Civil testified that on April 19, 2013, he recovered drugs from Plaintiff's room in the Apartment. (See Ex. 1 to Zelman Decl. in Supp. of Pl. Objs. ("Civil Dep. Tr.") (Dkt. 66-1) 20:21-24.) Civil explained that he knew the room was Plaintiff's because (1) he had arrested Plaintiff in that room on two prior occasions and Plaintiff had been "sleeping in the bed both times"; (2) he knew the "whole setup of [Plaintiff's] room"; and (3) Plaintiff's possessions, including his clothes, weights, Aero bed, and a "picture of him and a girl" were in the room. (Id. 46:10-47:8, 71:4-22.) Based on these facts, the court finds that it was reasonable for Civil to conclude that Plaintiff exercised dominion and control over the area where the marijuana was found and, accordingly, that there was probable cause to believe that Plaintiff constructively possessed the marijuana. See Chalmers, 73 F.3d at 1272.

Plaintiff challenges the veracity of Civil's testimony, arguing that: (1) Civil could not recall "a litany of obvious facts" concerning the April 19, 2013, arrest; and (2) the Original Complaint, which was signed by Civil, contained false allegations against Plaintiff.[3] (See Pl.

---

[3] Plaintiff also argues that the sworn affidavit Civil had drafted in support of the search warrant did not identify Plaintiff as a resident of the Apartment, indicating that Civil "knew or should have known that [P]laintiff no longer resided in the [A]partment." (Pl. Objs. at 8.) The fact that prior to executing the search warrant Civil supposedly knew Plaintiff did not live in the Apartment does not negate the fact that upon executing the warrant, Civil

Objs. at 6.) Plaintiff argues that "[b]ased on these undisputed facts alone, a jury would be entitled to find Civil's testimony incredible, and disregard Civil's professed recollections about Plaintiff's belongings being inside the apartment." (Id. at 7.)

The court finds that Plaintiff's attack on Civil's credibility does not create a genuine dispute of material fact sufficient to defeat summary judgment. "Broad, conclusory attacks on the credibility of a witness will not, by themselves, present questions of material fact." Island Software and Comput. Serv., Inc. v. Microsoft Corp., 413 F.3d 257, 261 (2d Cir. 2005). If a defendant "has made a properly supported [summary judgment] motion, the plaintiff may not respond simply with general attacks upon the defendant's credibility, but rather must identify affirmative evidence from which a jury could find that the plaintiff has carried his or her burden." Crawford-El v. Britton, 523 U.S. 574, 600 (1998) (emphasis added); see McCullough v. Wyandanch Union Free Sch. Dist., 187 F.3d 272, 280 (2d Cir. 1999) (holding that a party cannot defeat summary judgment "merely by impugning [a witness]'s honesty").

Plaintiff has not identified facts or counter-evidence from which a jury could conclude that Civil lacked knowledge to support a probable cause determination. To the contrary, Plaintiff does not contest that Civil was present when Plaintiff was arrested at the Apartment on November 28, 2012, and December 13, 2012. (Defs. 56.1 ¶¶ 8, 15; Pl. 56.1 Counter Statement ¶¶ 8, 15.) Plaintiff further admits that (1) several of his possessions were in the Apartment on April 19, 2013;[4] and (2) he entered the Apartment after the search was complete and Civil then

_____

discovered evidence suggesting that Plaintiff did in fact reside in the Apartment or, at the very least, exercised dominion and control over the marijuana discovered therein.

[4] Plaintiff argues that Civil "never mentioned observing a cat, a dog, or compact discs in the [A]partment"—items that Plaintiff admits he left in the Apartment. (Pl. Objs. at 5.) He appears to suggest that because Civil did not remember seeing these specific items, Civil's testimony that he recognized Plaintiff's clothes, sneakers, weights, Aero bed, and photo is unbelievable. (See id. 5-6.) The court finds this argument unavailing. It is plausible that Civil recognized some but not all of Plaintiff's belongings.

arrested him. (Defs. 56.1 ¶¶ 29, 31, 32; Pl. 56.1 Counter Statement ¶¶ 29, 31, 32.) As such,

Plaintiff's generalized attack on Civil's credibility is insufficient to create a dispute of material

fact.[5]

Accordingly, the court finds that the unconverted evidence establishes that Civil had

knowledge of sufficient facts which would lead a reasonable officer to believe there was

probable cause to arrest Plaintiff. The individual Defendants are therefore, at a minimum,

entitled to qualified immunity as to Plaintiff's false arrest claim.[6] Jenkins, 478 F.3d at 87

(holding that qualified immunity is available to an officer accused of false arrest where "it was

objectively reasonable for the officer to conclude that probable cause existed").[7] Accordingly,

the court adopts Judge Gold's recommendation and grants summary judgment in favor of

Defendants on Plaintiff's false arrest claim. Plaintiff's Motion is denied as it relates to this

claim.

### B. Malicious Prosecution

#### 1. Legal Standard

To state a claim for malicious prosecution, a plaintiff is required to establish "(1) that the

defendant commenced or continued a criminal proceeding against him; (2) that the proceeding

---

[5] Strikingly, Plaintiff simultaneously urges the court to find that a reasonable jury could believe Civil's testimony that he did not have probable cause until Plaintiff entered the Apartment on April 19, 2013. (Id. at 7.) Civil's subjective belief as to whether, and at what point, he had probable cause to make the arrest is irrelevant, however. See Jaegly v. Couch, 439 F.3d 149, 154 (2d Cir. 2006) (holding that the probable cause inquiry is "objective rather than subjective" and "depends upon the reasonable conclusion to be drawn from the facts known to the arresting officer at the time of the arrest").

[6] The court adds that there is no record evidence that Jones or Denespolis were personally involved in Plaintiff's arrest, a prerequisite to an award of damages under § 1983. See Farrell v. Burke, 449 F.3d 470, 484 (2d Cir. 2006).

[7] "'Qualified immunity' protects an official from liability under federal causes of action but is not generally understood to protect officials from claims based on state law." Id. at 86. Notwithstanding, "a similar doctrine exists under New York common-law" and because the individual Defendants are "entitled to qualified immunity under federal law, summary judgment [is] similarly appropriate on [plaintiff's] state law false arrest claim." Id. at 86-87.

was terminated in the plaintiff's favor; (3) that there was no probable cause for the proceeding; and (4) that the proceeding was instituted with malice." Kinzer v. Jackson, 316 F.3d 139, 143 (2d Cir. 2003). "A malicious prosecution claim can rest on a prosecution that is continued notwithstanding the discovery of information that exculpates the defendant[.]" Id. at 143-44.

> [E]ven when probable cause is present at the time of arrest, evidence
> could later surface which would eliminate that probable cause. In
> order for probable cause to dissipate, the groundless nature of the
> charge must be made apparent by the discovery of some intervening
> fact.

Id. at 144 (citing Lowth v. Town of Cheektowaga, 82 F.3d 563, 571 (internal quotation marks and citations omitted)). "[C]ontinuing probable cause is a complete defense to a constitutional claim of malicious prosecution," however. Betts v. Shearman, 751 F.3d 78, 82 (2d Cir. 2014).

### 2. Analysis

Judge Gold recommends that Defendants' motion for summary judgment be granted as to Plaintiff's malicious prosecution claim. (R&R at 12.) Judge Gold found that "Civil had ample probable cause to attribute constructive possession of the marijuana he found in the [A]partment to [P]laintiff, even though [P]laintiff was not present in the [A]partment when the marijuana was discovered." (Id.) He further noted that Plaintiff has not identified any facts that came out after Plaintiff's arrest that dissipated that probable cause. (Id.)

Plaintiff objects to this portion of the R&R, arguing that Judge Gold "erred by conflating the standard of probable cause to arrest with the standard of probable cause to prosecute." (Pl. Objs. at 11.) Plaintiff avers that had Judge Gold "properly analyzed the malicious prosecution standard, he would have concluded that there was no probable cause to believe the prosecution would succeed when Civil knew that Plaintiff was not in the apartment when the officers arrived, and falsely informed the District Attorney that [Plaintiff] was present." (Id.) In addition, Plaintiff argues that there was no probable cause to believe that the Superseding Complaint

would succeed "where Civil falsely informed the District Attorney that the Plaintiff made an incriminating statement, to wit 'see this is what happens when you let strangers into our apartment.'" (Id. at 12.)

The court reviews this portion of the R&R de novo. See 28 U.S.C. § 636(b)(1). At the outset, the court notes that Plaintiff is correct that "the probable cause standard in the malicious prosecution context is slightly higher than the standard for false arrest cases." Stansbury v. Wertman, 721 F.3d 84, 95 (2d Cir. 2013). "Probable cause, in the context of malicious prosecution, has . . . been described as such facts and circumstances as would lead a reasonably prudent person to believe the plaintiff guilty." Id. (citing Boyd v. City of N.Y., 336 F.3d 72, 76 (2d Cir. 2003)). Despite the revelation that Plaintiff was not in the Apartment during the search, the court finds that there existed "continuing probable cause" supporting the continuing prosecution of Plaintiff. See Betts, 751 F.3d at 82. In reaching this holding, the court relies on only the unconverted facts.[8]

Civil discovered marijuana in an area of the Apartment where items that he recognized as Plaintiff's belongings were located and where, based on his two prior interactions with Plaintiff, Civil believed Plaintiff slept. (Civil Dep. Tr. 20:21-24, 46:10-47:8, 71:4-22.) Although Plaintiff was not in the Apartment during the search, there is no dispute that he entered the Apartment shortly thereafter, further linking Plaintiff to the area where the marijuana was found. The court finds that these facts establish probable cause for the purpose of malicious prosecution. Plaintiff has not identified any facts that negate this probable cause. As such, the court adopts this portion of Judge Gold's R&R and grants summary judgment in favor of Defendants on Plaintiff's malicious prosecution claim.

---

[8] Because the parties dispute whether Plaintiff actually made the alleged incriminating statement "see this is what happens when you let strangers into our apartment," the court declines to consider it here. See Fed. R. Civ. P. 56(a).

### C. Denial of a Fair Trial

#### 1. Legal Standard

Claims of denial of the right to a fair trial "based on fabrication of information" arise in cases where "(1) [an] investigating official (2) fabricates information (3) that is likely to influence a jury's verdict, (4) forwards that information to prosecutors, and (5) the plaintiff suffers a deprivation of life, liberty, or property as a result." Garnett v. Undercover Officer C0039, 838 F.3d 265, 279 (2d Cir. 2016) (describing the standard established in Ricciuti v. N.Y.C. Transit Auth., 124 F.3d 123 (2d Cir. 1997)). "A plaintiff need not have been tried or convicted to assert a fair trial claim, as the constitutional violation occurs when the false information is transmitted to prosecutors." Nnodimele v. Derienzo, No. 13-CV-3461 (ARR) (RLM), 2016 WL 337751 (E.D.N.Y. Jan. 27, 2016) (citing Ricciuti, 124 F.3d at 127, 130). A plaintiff must show that he suffered a deprivation of liberty "as a result" of the forwarded false information. Garnett, 838 F.3d at 279 (citing Ricciuti, 124 F.3d at 123).

A "Section 1983 claim for the denial of a right to a fair trial based on an officer's provision of false information to prosecutors can stand even if the officer had probable cause" for the arrest. Id. at 277-78. Moreover, because "fabrication of evidence violate[s] a 'clearly established constitutional right,'" defendant "officers [are] not entitled to qualified immunity." Id. at 276 (alteration omitted) (quoting Ricciuti, 124 F.3d at 130).

#### 2. Analysis

##### a. Fair Trial Claim Against Civil

Judge Gold recommends that both Cross-Motions for summary judgment as to Plaintiff's fair trial claim against Civil be denied because Plaintiff "has raised a question of fact with respect to whether he suffered a deprivation of liberty that was proximately caused by . . . Civil's

allegedly false incriminating statements." (R&R at 18.) Specifically, Judge Gold found that there is a factual question about (1) "whether the District Attorney would have decided to prosecute [P]laintiff absent the contested incriminating allegations in the two criminal complaints"; and (2) whether the charges against Plaintiff would have been dismissed by the state court earlier "if the original complaint had accurately reported when, in the sequence of events, [P]laintiff arrived at the apartment." (Id. at 16-17.)

Defendants object to this portion of the R&R, arguing that Civil's original false statement and second allegedly false statement were immaterial to and did not cause the District Attorney's Office (the "DA") to prosecute Plaintiff. (Defs. Objs. at 1.) In support of this argument, Defendants assert that the DA continued to prosecute the case after the first false statement was discovered. (Id.) Defendants similarly argue that the second allegedly fabricated statement— "see this is what happens when you let strange people into our apartment"—was also immaterial to the decision to arrest and prosecute Plaintiff. (Id. at 2.) In Defendants' view, the decision to arrest and prosecute Plaintiff was based on the officers' "undisputed observations and prior experiences with plaintiff." (Id.) In addition, Defendants assert that Judge Gold "engaged in speculation by inferring that the charges may have been dismissed earlier had the Superseding Criminal Complaint been filed initially" and this speculation created a factual question that does not in fact exist. (Id.)

Plaintiff also objects to this portion of the R&R, arguing that Judge Gold "conflated two related, but critically distinct issues," i.e. the false statement in the Original Complaint and the allegedly false statement in the Superseding Complaint. (R&R at 16.) He asserts that because the false statement in the Original Complaint is admittedly untrue and Plaintiff sustained a deprivation of liberty by making multiple court appearances over the course of a year based on

that false statement, Plaintiff is entitled to summary judgment on his fair trial claim, irrespective of the second false statement, which Plaintiff admits is in dispute. (Pl. Objs. at 16, 19.)

The court reviews this portion of the R&R de novo. 28 U.S.C. § 636(b)(1). The undisputed facts establish that (1) on at least one occasion, Civil provided the DA with false information;[9] and (2) Plaintiff suffered a deprivation of liberty.[10] The parties' Cross-Motions for summary judgment therefore turn on the question of causation—that is, whether Plaintiff's deprivation of liberty came "as a result" of Civil's actions. Garnett, 838 F.3d at 279. The court determines that there is a genuine dispute as to key facts such that a jury could reasonably decide either way on the question of causation. Summary judgment is therefore inappropriate. Anderson, 477 U.S. at 252.

Defendants assert that the DA would have prosecuted Plaintiff's case absent the false statement in the Original Complaint. They argue that the fact that the DA continued to prosecute Plaintiff after the first false statement was discovered proves this point. Defendants' argument ignores the possibility that the DA may have dropped the charges against Plaintiff without the second allegedly false statement. As such, a reasonable jury could find first, that the second statement was false and second, that without the false statements, the charges against Plaintiff would have been dropped by the DA and/or dismissed by the state court because there was insufficient evidence of Plaintiff's dominion and control over the marijuana. A reasonable jury could also reach the opposite conclusion as to either question, and could believe that Plaintiff's

---

[9] The parties agree that Civil signed the Original Complaint, which contained false information he provided to the DA. (See Pl. 56.1 ¶¶ 15, 16; Defs. R. 56.1 Counter Statement ("Defs. 56.1 Counter Statement") (Dkt. 48) ¶¶ 15, 16.)

[10] Defendants concede that Plaintiff was required to make at least four court appearances because of the charges stemming from his April 19, 2013, arrest. (See Pl. 56.1 ¶ 29; Defs. 56.1 Counter Statement ¶ 29.) The Second Circuit has "consistently held that a post-arraignment defendant who is 'obligated to appear in court in connection with criminal charges whenever his attendance is required' suffers a Fourth Amendment deprivation of liberty." Swartz v. Insogna, 704 F.3d 105, 112 (2d Cir. 2013) (quoting Murphy v. Lynn, 118 F.3d 938, 947 (2d Cir. 1997)).

case was dismissed because the Superseding Complaint was facially insufficient and not, as Plaintiff argues, dismissed on the merits.

Because there is sufficient evidence to allow a rational trier of fact to find for Plaintiff or Defendant on this claim, summary judgment is inappropriate. See Anderson, 477 U.S. at 255. The court therefore denies the parties' Cross-Motions as to Plaintiff's fair trial claim against Civil.

### b. Fair Trial Claim Against Denesopolis and Jones

Judge Gold further recommends that Defendants' Motion be granted with respect to Plaintiff's fair trial claim against Denesopolis and Jones because Plaintiff attributes the allegedly false statements only to Civil and "has not presented any evidence suggesting that Denesopolis or Jones had any role in fabricating any evidence." (R&R at 18.) Plaintiff objects to this portion of the R&R, arguing that the evidence viewed in the light most favorable to Plaintiff establishes that Denesopolis and Jones knew or should have known that Civil perjured himself in violation of Plaintiff's civil rights. (Pl. Objs. at 19-20.)

The court reviews this portion of the R&R de novo. See 28 U.S.C. § 636(b)(1). Even assuming Plaintiff is correct that (1) Denesopolis and Jones were present for Plaintiff's arrest on April 19, 2013, and (2) Denespolis saw and approved Civil's paperwork, there is no record evidence that either Denesopolis or Jones was involved in preparing the Original or Superseding Complaint or that these officers were aware of the false statements made by Civil in those complaints.[11] Accordingly, the court grants summary judgment in favor of Denesopolis and

---

[11] The so-called "collective knowledge doctrine" allows knowledge possessed by one police officer to be imputed to others working on the same team, see United States v. Colon, 250 F.3d 130, 135 (2d Cir. 2001), but this doctrine "has traditionally been applied to assist officers in establishing probable cause—not to impute bad faith to one member of an enforcement team on the basis of another member's knowledge," Simone v. United States, 642 F. App'x 73, 75 (2d Cir. 2016) (summary order) (quoting Savino v. City of New York, 331 F.3d 63, 74 (2d Cir. 2003)).

Jones on Plaintiff's fair trial claim. See, e.g., Buie v. City of N.Y., No. 12-CV-4390 (RJD) (CLP), 2015 WL 6620230, at *9 (E.D.N.Y. Oct. 30, 2015) (granting summary judgment on denial of a fair trial claim in favor of detective where there was no record evidence that the detective "was involved in preparing the criminal complaint," which allegedly contained false information); Struthers v. City of N.Y., No. 12-CV-242 (JG), 2013 WL 2390721, at *13 (E.D.N.Y. May 31, 2013) (granting summary judgment in favor of officer where there was no record evidence that the officer was involved in preparing the criminal complaint that contained allegedly fabricated information).

### D. Failure to Intervene

#### 1. Legal Standard

"A law enforcement officer has an affirmative duty to intercede on the behalf of a citizen whose constitutional rights are being violated in his presence by other officers." Porter v. Goord, 467 F. App'x 21, 23 (2d Cir. 2012) (summary order) (emphasis added) (quoting O'Neill v. Krzeminski, 839 F.2d 9, 11 (2d Cir. 1988)). "In order for liability to attach, there must have been a realistic opportunity to intervene to prevent the harm from occurring," however. Anderson v. Branen, 17 F.3d 552, 557 (2d Cir. 1994).

#### 2. Analysis

Judge Gold recommends that Defendants' Motion be granted as to Plaintiff's claims of failure to intervene against Jones and Denespolis. (R&R at 20.) He determined that Plaintiff has "failed to identify any evidence indicating that . . . Jones and Denespolis . . . were aware of the false statements made by Civil in the two criminal complaints or that either of them had any opportunity to correct those statements." (Id. at 19.) Because Plaintiff's allegations concerning Jones and Denespolis' supposed knowledge are "based on mere speculation," Judge Gold held

that these allegations are insufficient to support Plaintiff's claim that Jones and Denespolis should be held liable for failing to intervene. (Id.)

Plaintiff's objections to this portion of the R&R are outlined supra in Section III.D.2.b. The court overrules Plaintiff's objections for the same reasons outlined above and grants Defendants' Motion with respect to Plaintiff's failure to intervene claim. Plaintiff's arguments that Jones and Denespolis "should have" or "must have" known that Civil had allegedly violated Plaintiff's rights are speculative and cannot defeat Defendants' Motion.

### E. Excessive Pre-Arraignment Detention

#### 1. Legal Standard

The Fourth Amendment requires a judicial determination of probable cause "either before or promptly after arrest." Gerstein v. Pugh, 420 U.S. 103, 125 (1975). A determination of probable cause made within 48 hours of arrest "will, as a general matter, comply with the promptness requirement of Gerstein." Cty. of Riverside v. McLaughlin, 500 U.S. 44, 56 (1991). A delay of 48 hours or less can be unreasonable, however, if the plaintiff demonstrates a delay "for the purpose of gathering additional evidence to justify the delay, a delay motivated by ill will against the arrested individual, or delay for delay's sake." Id.

#### 2. Analysis

Judge Gold recommends that the court grant Defendants' Motion with respect to Plaintiff's excessive pre-arraignment detention claim because "Plaintiff has failed to identify any evidence suggesting that his arraignment was unreasonably delayed." (R&R at 20-21.) Plaintiff objects to this portion of the R&R, arguing that there exists a "substantial issue of material fact"

regarding whether his detention was unreasonable because Defendants lacked probable cause to arrest him. (Pl. Obj. at 22.)

Because Plaintiff simply reiterates arguments he already made in his opposition to Defendants' Motion (see Pl. Mem. at 29-30), the court reviews this portion of the R&R for clear error. See Pall, 249 F.R.D. at 51. Finding none, the court adopts Judge Gold's recommendation and grants Defendants' Motion as to Plaintiff's excessive pre-arraignment detention claim.

### F. Illegal Strip Search

#### 1. Legal Standard

"[T]o bring an illegal strip search claim under Section 1983, '[i]t is well settled in this Circuit that personal involvement of defendants in alleged constitutional deprivations is a prerequisite to an award of damages under § 1983.'" Anderson v. City of N.Y., 817 F. Supp. 2d 77, 93 (E.D.N.Y. 2011) (quoting Colon v. Coughlin, 58 F.3d 865, 873 (2d Cir. 1995).

> Personal involvement can be shown by evidence that the defendant 'participated directly in the alleged constitutional violation'; or that the defendant acted in a supervisory capacity by creating a policy or custom under which violations occurred, by negligently supervising subordinates, or by failing to act or remedy wrongs after being aware of them.

Id. (quoting Coughlin, 58 F.3d at 873).

#### 2. Analysis

Judge Gold recommends granting summary judgment in favor of Defendants on Plaintiff's strip search claim because Plaintiff is unable to identify the officers who participated in the strip search, as is required to sustain a Section 1983 claim.[12] (R&R at 21.) Plaintiff objects to this portion of the R&R. (Pl. Objs. 23-25.) He concedes that he cannot name the

---

[12] Judge Gold determined in the alternative that Plaintiff's claim fails because his arrest was supported by probable cause. (R&R at 21.)

officers that personally subjected him to the search. (See Defs. 56.1 ¶ 37; Pl. 56.1 Counter Statement ¶ 37.) Nonetheless, he argues that Civil and Denespolis "proximately caused" him to be strip searched and this is sufficient to impose liability. (Pl. Objs. at 23-24.) In Plaintiff's view, Civil arrested him and therefore "knew or should have known that it was standard operating procedure to strip search persons arrested for drug offenses." (Id. at 24.) Moreover, because strip searches have to be approved by a supervisor, Plaintiff argues that Denespolis, Civil's supervisor, "must have approved the strip search." (Id. at 25.)

Because Plaintiff's objections simply reiterate arguments that were previously made in support of his Motion (see Pl. Mem. ¶¶ 42-43), the court reviews this portion of the R&R for clear error. See Pall Corp., 249 F.R.D. at 51. The court finds that Plaintiff's speculative allegations that Civil "should have known" Plaintiff was strip searched and Denespolis "must have" approved the search (see Pl. Objs. at 24-25) are insufficient for the claim to survive summary judgment. Plaintiff has failed to put forth any evidence supporting either Civil or Denespolis's alleged personal involvement in the strip search, not to mention evidence sufficient to raise a triable issue of fact. Finding no clear error in this portion of the R&R, the court adopts Judge Gold's recommendation and grants Defendants' summary judgment motion as to Plaintiff's illegal strip search claim.

### G. Municipal Liability

#### 1. Legal Standard

"A municipality may not be held liable under § 1983 solely on the basis of respondeat superior[;] rather, to establish municipal liability, 'a plaintiff must show that that the violation of his constitutional rights resulted from a municipal custom or policy.'" McGee v. Doe, 568 F. App'x 32, 41 (2d Cir. 2014), as amended (July 2, 2014) (summary order) (quoting

DeCarlo v. Fry, 141 F.3d 56, 61 (2d Cir. 1998)); see also Monell v. Dep't of Soc. Servs., 436 U.S. 658 (1978).

"[I]solated acts . . . by non-policymaking municipal employees are generally not sufficient to demonstrate a municipal custom, policy, or usage that would justify municipal liability." Jones v. Town of E. Haven, 691 F.3d 72, 81 (2d Cir. 2012) (citing Villante v. Dep't. of Corr., 786 F.2d 516, 519 (2d Cir. 1986)). "[S]uch acts would justify liability," however, if they "were sufficiently widespread and persistent to support a finding that they constituted a custom, policy, or usage of which supervisory authorities must have been aware, or if a municipal custom, policy, or usage would be inferred from evidence of deliberate indifference of supervisory officials to such abuses." Id. (emphasis added) (citing Amnesty Am. v. Town of W. Hartford, 361 F.3d 113, 125-26 (2d Cir. 2004)).

"[A] local government's decision not to train certain employees about their legal duty to avoid violating citizens' rights may rise to the level of an official government policy" only if the failure to train "amount[s] to 'deliberate indifference to the rights of persons with whom the [untrained employees] come into contact.'" Connick v. Thompson, 563 U.S. 51, 61 (2011) (second alteration in original) (quoting Canton v. Harris, 489 U.S. 378, 388 (1989)). "Only then 'can such a shortcoming be properly thought of as a city 'policy or custom' that is actionable under § 1983.'" Id. (quoting Canton, 489 U.S. at 389). Deliberate indifference is a "'stringent standard of fault,'" which requires "'proof that a municipal actor disregarded a known or obvious consequence'" of the particular failure in training. Id. (quoting Bd. of Cty. Comm'rs v. Brown, 520 U.S. 397, 410 (1997)). "A pattern of similar constitutional violations by untrained employees is 'ordinarily necessary' to demonstrate deliberate indifference for purposes of failure to train." Id. at 62 (quoting Brown, 520 U.S. at 409). The Supreme Court has cautioned that a

"municipality's culpability for a deprivation of rights is at its most tenuous where a claim turns on a failure to train." Id. at 61.

### 2. Analysis

In his Amended Complaint, Plaintiff asserts claims for municipal liability with respect to his false arrest, malicious prosecution, failure to intervene, and pre-trial excessive detention claims. (Am. Compl. ¶¶ 26-29, 38-42, 49-53, 66-70; see also Pl. Mem. ¶ 45.) Judge Gold recommends that this court grant Defendants' Motion with respect to all municipal liability claims. (R&R at 22.) He first notes that Plaintiff has not alleged municipal liability with respect to his fair trial claim—the only claim that Judge Gold recommends should survive summary judgment—and "[e]ven if [P]laintiff had asserted a claim for municipal liability in connection with his fair trial cause of action, [he] would recommend that the claim be dismissed on summary judgment." (Id.) Construing Plaintiff's claim as a failure to train claim, Judge Gold found that the "sole evidence" submitted by Plaintiff in opposition to Defendants' Motion on this claim—a list of 31 civilian complaints and nine lawsuits brought against Civil—was insufficient to defeat Defendants' Motion. (Id. at 22-23.) He ruled that "[a]bsent substantiated prior allegations of misconduct similar to [the misconduct] at issue here and evidence that responsible supervisory officials failed to take appropriate responsive action, [P]laintiff's claims of municipal liability cannot survive." (Id.)

In objecting to this portion of the R&R, Plaintiff asserts that he "specifically alleged municipal liability with respect to all causes of action," including with respect to his fair trial claim. (Pl. Objs. at 25-26.) Plaintiff does not appear to object to Judge Gold's interpretation of his claim against the City as one for "failure to train," however. With respect to that claim, Plaintiff argues that the "sheer volume of complaints" against Civil "put the City on notice that

there was a possibility that Civil had violated civilians' civil rights, and whether the City failed to effectively respond, were issues of fact properly left to the jury." (Id. at 27.) Plaintiff avers that he is not required to show that the complaints were substantiated. (Id.)

Because Plaintiff simply reiterates arguments he already made in his opposition to Defendants' Motion (see Pl. Mem. ¶ 44), the court reviews this portion of the R&R for clear error. See Pall, 249 F.R.D. at 51. As an initial matter, the court need only adjudicate whether Plaintiff can sustain a claim for municipal liability in conjunction with his fair trial claim—the only claim that survives summary judgment. See Deraffele v. City of New Rochelle, No. 15-CV-282 (KMK), 2016 WL 1274590, at *17 (S.D.N.Y. Mar. 30, 2016) ("It is well established that a Monell claim cannot lie in the absence of an underlying constitutional violation." (citing Segal v. City of N.Y., 459 F.3d 207, 219 (2d Cir. 2006) ("Monell does not provide a separate cause of action for the failure by the government to train its employees; it extends liability to a municipal organization where that organization's failure to train, or the policies or customs that it has sanctioned, led to an independent constitutional violation.")). While Plaintiff has not expressly alleged municipal liability with respect to his fair trial claim, he does refer to "Defendants" in his allegations, which plausibly could include the City. (See id. ¶¶ 74-75.) As such, the court will analyze the Monell claim as if it had properly been alleged.

The court finds that Judge Gold did not commit clear error in recommending that Plaintiff's fair trial claim against the City be dismissed. The evidence in the record could not lead a rational trier of fact to find for Plaintiff on his failure to train claim, as the evidence is insufficient to plausibly support an inference of deliberate indifference. While Plaintiff submitted a list of complaints and lawsuits that have been filed against Civil, Plaintiff has not provided any information as to the nature or substance of these complaints. Critically, Plaintiff

has not shown that the cited complaints relate to prior instances of <u>similar misconduct</u>, i.e. perjury or fabrication of evidence. <u>See</u> <u>Connick</u>, 563 U.S. at 62 (holding that "[a] pattern of <u>similar</u> constitutional violations by untrained employees is ordinarily necessary to demonstrate deliberate indifference for purposes of failure to train" (internal quotation marks and citation omitted) (emphasis added)).[13] Moreover, Plaintiff has failed to put forth evidence that the City ignored these complaints against Civil. Plaintiff points out that Civil testified before the Civilian Complaint Review Board (the "CCRB") on multiple occasions but the CCRB only recommended that disciplinary action be taken against him once. (<u>See</u> Pl. Objs. at 27; Civil Dep. Tr.) This evidence does not, as Plaintiff suggests, establish that the City "failed to seriously investigate or appropriately address the many complaints against Civil." (Pl. Objs. at 27.) In fact, it tends to show that the City confronted the allegations against Civil, as opposed to ignoring the complaints, as Civil was called before the CCRB on numerous occasions.[14]

In sum, the evidence in the record provides an insufficient basis for a reasonable jury to find for Plaintiff on his municipal liability claim against the City. <u>See</u> <u>Anderson</u>, 477 U.S.

---

[13] <u>Cf.</u> <u>Strauss v. City of Chi.</u>, 760 F.2d 765, 768 69 (7th Cir. 1985) ("[T]he number of complaints filed, without more, indicates nothing. People may file a complaint for many reasons, or for no reason at all.").

[14] The court declines to decide whether evidence of unsubstantiated complaints is sufficient to show deliberate indifference in the context of a failure to train claim. <u>Compare, e.g.</u>, <u>Fiacco v. City of Rensselaer</u>, 783 F.2d at 328 ("Whether or not the claims had validity, the very assertion of a number of such claims put the City on notice that there was a possibility that its police officers had used excessive force. The City's knowledge of these allegations and the nature and extent of its efforts to investigate and record the claims were pertinent to Fiacco's contention that the City had a policy of nonsupervision of its policemen that reflected a deliberate indifference to their use of excessive force."), <u>with, e.g.</u>, <u>Pacheco v. City of N.Y.</u>, 234 F.R.D. 53, 55 (E.D.N.Y. 2006) (holding that "it is doubtful whether unsubstantiated instances of any kind of misconduct can ever be used to prove a <u>Monell</u> claim"); <u>Frails v. City of New York</u>, 236 F.R.D. 116, 118 (E.D.N.Y. 2006) (holding that unsubstantiated allegations of similar misconduct are unlikely to prove a <u>Monell</u> claim); <u>Sealey v. Fishkin</u>, No. 96-CV-6303 (RR), 1998 WL 1021470, at *3 (E.D.N.Y. Dec. 2, 1998) (holding that unsubstantiated allegations of misconduct do not prove City's deliberate indifference); <u>Marcel v. City of N.Y.</u>, No. 88-CV-7017 (LLS), 1990 WL 47689 at *9 (S.D.N.Y. Apr. 11, 1990) ("Unsubstantiated CCRB reports do not demonstrate a breach of a municipality's duty to train or supervise its police.").

at 252. Plaintiff's objections are therefore overruled and Judge Gold's recommendation is adopted. Defendants' Motion is granted as to Plaintiff's municipal liability claims.

## IV.   CONCLUSION

For the following reasons, Plaintiff and Defendants' objections are OVERRULED. The R&R (Dkt. 59) is ADOPTED IN FULL. Defendants' Motion (Dkt. 39) is GRANTED IN PART and DENIED IN PART. Plaintiff's Motion (Dkt. 43) is DENIED.

Plaintiff's false arrest, malicious prosecution, failure to intervene, illegal strip search, and excessive pre-arraignment detention claims are DISMISSED in their entirety and as to all Defendants. Plaintiff's denial of a fair trial claim is DISMISSED as it pertains to the City, Jones, and Denespolis. The only claim that survives summary judgment is Plaintiff's denial of a fair trial claim against Civil.

The court DIRECTS the parties to complete any remaining discovery and follow the court's Individual Rules for pre-trial procedures.

SO ORDERED.

s/Nicholas G. Garaufis

Dated: Brooklyn, New York
July 7, 2017

NICHOLAS G. GARAUFIS
United States District Judge