UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
------------------------------------------------------------------------X

DUSHANNE ASHLEY

                 Plaintiff,

      -against-

DETECTIVE MIKE CIVIL, shield #2114,

               Defendant.
------------------------------------------------------------------------X

**MEMORANDUM & ORDER**

**14-CV-5559 (NGG) (SMG)**

NICHOLAS G. GARAUFIS, United States District Judge.

Plaintiff Dushanne Ashley brings a § 1983 denial of a fair trial claim against Defendant
Detective Mike Civil. (See July 7, 2017 Mem. & Order Adopting Report and Recommendation
("M&O Adopting R&R") (Dkt. 62) at 37-38.) Trial is scheduled to begin in this case on April 1,
2019. Pending before the court are the parties' motions in limine. (See Def. Mot. (Dkt. 97); Def.
Mem. in Support of Def. Mot. ("Def. Mem.") (Dkt. 99); Pl. Mot. (Dkt. 102).) For the reasons set
forth below, the parties' motions in limine are GRANTED IN PART and DENIED IN PART. In
addition, the court RESERVES JUDGMENT until trial with respect to several issues raised by
the parties.

## I.     BACKGROUND

The court assumes the parties' familiarity with the factual background and procedural
history in this matter and thus will only summarize information relevant to the instant motions.

On November 28, 2012, Plaintiff was arrested inside of 125 East 18th Street, Apartment
51, Brooklyn, New York (the "Apartment") for criminal possession of marijuana. (M&O
Adopting R&R at 2.) Civil was present for the arrest. (Id.) The criminal complaint for this
arrest states that Plaintiff lives at the Apartment and "stays" in the living room. (Id.) On the day
of the arrest, an air mattress was present in the living room of the Apartment. (Id.) On

December 13, 2012, Plaintiff was again arrested in the Apartment for criminal possession of marijuana. (Id.) Although Civil was not the arresting officer, he was present for the arrest. (Id.) The criminal complaint for this incident states that on December 28, 2012, Plaintiff resided at the Apartment. (Id.)

On April 19, 2013, Defendant Civil executed a search warrant at the Apartment. (Id. at 3.) The search warrant listed the address of the Apartment and the name of one individual, Charles Patrick. (Id.) Plaintiff was not named on the search warrant and contends that he did not reside at the Apartment on April 19, 2013. (Id.) Upon entering the Apartment on April 19, 2013, Civil observed two individuals, Charles Patrick and Jose Carlos. (Id.) During his search. Civil found 18 small plastic bags of marijuana in the living room of the Apartment. (Id.) Several of Plaintiff s possessions, including compact discs, a cat, and a dog, were in the Apartment. (Id.) Plaintiff was not present at the Apartment when the search was conducted but he arrived shortly thereafter, while officers were still in the Apartment, and was placed under arrest. (Id.)

Plaintiff was charged in state court with Criminal Possession of Marijuana in the Fourth Degree, Criminal Possession of Marijuana in the Fifth Degree, and Unlawful Possession of Marijuana. (Id.) The criminal complaint (the "Original Complaint"), which was signed by Civil, inaccurately stated that, at the time the marijuana was discovered, Civil observed Plaintiff and his co-defendant Carlos sitting in the room where the marijuana was recovered. (Id.) The prosecution filed a superseding information (the "Superseding Information") to correct this error. (Id. at 4.) The Superseding Information included the same charges as the Original Complaint but stated that Plaintiff entered the Apartment only after the search was conducted and added that upon his arrival, Plaintiff made the following statement: "this is what happens when you let

2

strange people into our apartment." (Id.) Plaintiff denies having said this. (Id.) Plaintiff was required to make a number of court appearances in relation to the Original and Superseding Information. (Id.) On July 18, 2014, the charges stemming from Plaintiff's April 19, 2013 arrest were dismissed by the state court. (Id.) Defendant asserts that the charges were dismissed due to "facial insufficiency" of the Superseding Information, but Plaintiff contends that they were "dismissed on the merits" and that the state court just "happened to refer to the Superseding Criminal Court Complaint as facially insufficient." (Id.)

Plaintiff subsequently brought this action pursuant to 42 U.S.C. § 1983 against Defendants the City of New York (the "City"), Sergeant Luke Denesopolis, Detectives Mike Civil and Jason Jones, and Police Officers Jane/John Doe(s) #1-10. (Am. Compl. (Dkt. 14).) He asserted the following causes of action against Defendants: (1) false arrest; (2) malicious prosecution; (3) failure to intervene; (4) illegal strip search; (5) excessive pre-arraignment detention; and (6) denial of a fair trial. (Id. at 4-11.)

Defendants moved for summary judgment on all claims. (Defs. Mot. for Summ. J. (Dkt. 39).) Plaintiff opposed Defendants' motion and cross-moved for partial summary judgment on his false arrest and denial of a fair trial claims. (Pl. Cross-Mot. for Summ. J. (Dkt. 43).) The court referred Defendants' motion for summary judgment and Plaintiff's cross-motion for partial summary judgment (together, the "Cross-Motions") to Magistrate Judge Steven L. Gold for a Report and Recommendation ("R&R") pursuant to 28 U.S.C. § 636(b)(1)(B) and Federal Rule of Civil Procedure 72(b)(1). (Nov. 28, 2016, Order Referring Mot.) On April 17, 2017, Judge Gold issued an R&R, recommending that Defendants' Motion be granted in part and denied in part and that Plaintiff's Motion be denied. (R&R (Dkt. 59) at 2.) Plaintiff and Defendants each filed timely objections to the R&R. (Defs. Objs. to R&R ("Defs. Objs.") (Dkt. 64); Pl. Objs. to

3

R&R ("Pl. Objs.") (Dkt. 65).) The court ultimately dismissed these objections and adopted the

R&R in full. (M&O Adopting R&R at 2.) On May 8, 2018, Plaintiff moved for reconsideration

of the court's conclusion in the M&O that there remained a genuine issue of fact as to whether

Plaintiff's deprivation of liberty came "as a result" of Defendant Civil's actions. (Pl. Mot. for

Reconsideration (Dkt. 81).) On May 8, 2018, the court denied Plaintiff's motion for

reconsideration. (M&O Denying Mot. for Reconsideration (Dkt. 87).)

The court approved the parties' joint pretrial order ("JPTO") on February 22, 2019.

(Order approving JPTO (Dkt. 91).) On March 29, 2019, Defendant filed an amended JPTO (the

"Amended JPTO"). (See Amended JPTO (Dkt. 106).)

## II.    LEGAL STANDARD

### A.    Motions in Limine

"The purpose of a motion in limine is to allow the trial court to rule in advance of trial on

the admissibility and relevance of certain forecasted evidence." Gorbea v. Verizon N.Y., Inc.,

No. 11-CV-3758 (KAM), 2014 WL 2916964, at *1 (E.D.N.Y. June 25, 2014) (citing Luce v.

United States, 469 U.S. 38, 40 n.2 (1984); Palmieri v. Defaria, 88 F.3d 136, 141 (2d Cir. 1996);

Nat'l Union Fire Ins. Co. of Pittsburgh, Pa. v. L.E. Myers Co. Grp., 937 F. Supp. 276, 283

(S.D.N.Y. 1996)). "Evidence should be excluded on a motion in limine only when the evidence

is clearly inadmissible on all potential grounds." United States v. Paredes, 176 F. Supp. 2d 179,

181 (S.D.N.Y. 2001). Further, "courts considering a motion in limine may reserve decision until

trial, so that the motion is placed in the appropriate factual context." Jean-Laurent v. Hennessy,

840 F. Supp. 2d 529, 536 (E.D.N.Y. 2011) (citing Nat'l Union Fire Ins. Co., 937 F. Supp. at

287). The court's ruling on a motion in limine is preliminary and "subject to change when the

case unfolds . . ." Luce, 469 U.S. at 41.

4

**B.    General Rules of Admissibility**

Evidence must be relevant to be admissible at trial. Fed. R. Evid. 402. Evidence is relevant if it "has any tendency to make a fact [that is of consequence to the determination of the action] more or less probable than it would be without the evidence." Fed. R. Evid. 401. This relevance standard is "very low." United States v. White, 692 F.3d 235, 246 (2d Cir. 2012) (quoting United States v. Al-Moayad, 545 F.3d 139, 176 (2d Cir. 2008)). All relevant evidence is admissible unless the United States Constitution, a federal statute, the Federal Rules of Evidence, or rules prescribed by the Supreme Court provide otherwise. Fed. R. Evid. 402; see also White, 692 F.3d at 246.

"The court may exclude relevant evidence if its probative value is substantially outweighed by a danger of one or more of the following: unfair prejudice, confusing the issues, misleading the jury, undue delay, wasting time, or needlessly presenting cumulative evidence." Fed. R. Evid. 403. "[W]hat counts as the Rule 403 'probative value' of an item of evidence, as distinct from its Rule 401 'relevance,' may be calculated by comparing evidentiary alternatives." Old Chief v. United States, 519 U.S. 172, 184 (1997). In short, Rule 403 requires the court to "make a 'conscientious assessment' of whether unfair prejudice substantially outweighs probative value" with regard to each piece of proffered evidence. Al-Moayad, 545 F.3d at 160 (quoting United States v. Salameh, 152 F.3d 88, 110 (2d Cir. 1998) (per curiam)).

**III.    DISCUSSION**

The court addresses each of the parties' requests in turn.

**A.    Plaintiff's Prior Arrests and Convictions**

Plaintiff moves to preclude Defendant from mentioning his prior arrests or convictions. (Pl. Mot. at 3-5.) There are two categories of prior arrests and/or convictions at issue here. The

first category are arrests and convictions of Plaintiff prior to November 2012 (the "Prior Arrests"). The second category are Plaintiff's arrests in November 2012 (the "November Arrest") and December 2012 (the "December Arrests").

Plaintiff argues that his criminal history has no probative value and would prejudice Plaintiff. (Id. at 3.) Moreover, he contends that prior arrests that did not result in convictions have no probative value and are not admissible under Federal Rule of Evidence 609. (Id.) Plaintiff also contends that the November and December Arrests should be excluded because they involved marijuana possession, and their similarity to the crime for which Plaintiff was arrested in April 2013 renders evidence of them "highly prejudicial." (Id.)

For the following reasons, Plaintiff's first motion in limine is GRANTED in part and DENIED in part.

        1.     Prior Arrests

Defendant states that he has no intention of eliciting testimony or introducing evidence pertaining to the Prior Arrests, unless Plaintiff "opens the door" by testifying that he suffered emotional damages over and above the time he spent attending court. (Def. Resp. (Dkt. 103) at 1.) Defendant argues that if Plaintiff so testifies, then Defendant should be able to "explore the fact that plaintiff has been prosecuted more than two-dozen times and has been incarcerated more than once" (id.), "[b]ecause a plaintiff who has had a number of prior arrests and detentions is likely to have suffered less distress than one who has never before been detained," Banushi v. Palmer, No. 08-CV-2937 (KAM) (JO), 2011 WL 13894, at *3 (E.D.N.Y. Jan. 4, 2011) (citation and quotation marks omitted), aff'd, 500 F. App'x 84 (2d Cir. 2012).

The court finds that plaintiff's prior arrest and incarceration history may be relevant to the jury's determination of damages under Federal Rule of Evidence 402. See Banushi, 2011

6

WL 13894, at *3. In addition, "[t]he probative value of this evidence is not substantially outweighed by 'the danger of unfair prejudice, confusion of the issues, or misleading the jury.'" Id. (quoting Fed. R. Evid. 403); see also Picciano v. McLoughlin, No. 5:07-CV-0781, 2010 WL 4366999 (N.D.N.Y. Oct. 28, 2010) ("[Plaintiff's] subsequent arrests are probative of Plaintiff's claim for emotional damages, and the probative value of the testimony is not substantially outweighed by the danger of unfair prejudice, confusion of the issues, or misleading the jury, or by considerations of undue delay, waste of time, or needless presentation of cumulative evidence."). If Plaintiff testifies "that he sustained emotional damages from being prosecuted," Defendant may inquire into plaintiff's past arrests and incarcerations. Defendant may not, however, inquire into the reasons for Plaintiff's prior arrests. See Banushi, 2011 WL 13894, at *3 (permitting defendant to question plaintiff about prior arrests, but not the reasons for those arrests, because of their relevance to damages); Ramos v. County of Suffolk, 707 F.Supp.2d 421, 424 (E.D.N.Y. 2010) (same).

2. November and December Arrests

Defendant states that he intends to elicit testimony concerning the November and December Arrests, but agrees to do so without mentioning that they were for marijuana or other drugs. (Def. Resp. at 2-3.) Each of these arrests occurred at the Apartment and Defendant was present for each. (Id. at 2.) During the course of each arrest, Defendant allegedly observed Plaintiff asleep in the bed in the same room in the Apartment where marijuana was later found on April 19, 2013. (Id.)

A central issue in this case is whether Plaintiff's deprivation of liberty came "as a result" of Defendant's allegedly false statements, each of which was related to the question of whether Plaintiff had "dominion or control" over the marijuana found in the Apartment. As Judge Gold

7

explained, this is related to the question of "whether plaintiff would have suffered the same deprivation of liberty 'in light of other inculpatory evidence, untainted by the misconduct of defendants.'" (R&R at 16 (quoting Nnodimele v. Derienzo, No. 13-CV-3461 (ARR), 2016 WL 337751, at *14 (E.D.N.Y. Jan. 27, 2016)).)

Defendant argues that the fact that these two arrests occurred and what Defendant observed in the course of those arrests—i.e., that Plaintiff was sleeping in the Apartment allegedly surrounded by his own belongings—constitute "other inculpatory evidence" showing that Plaintiff lived at the address and thus had "dominion and control" over the marijuana. (Def. Resp. at 2.) The court agrees. Consistent with its suggestion, Defendant may elicit testimony about the November and December Arrests, but Defendant may not inquire into the reason for those arrests.

## B.     Evidence Concerning the Superseding Information

The nature of Plaintiff's motion to preclude Defendant from introducing the Superseding Information is not clear to the court. (See Pl. Mot. at 5-8.) This is particularly so because Plaintiff's fair trial claim is in part premised on an allegedly false statement contained only in the Superseding Information. (See Def. Resp. at 3.) Precluding the Superseding Information would thus seem to undermine Plaintiff's own case. Plaintiff nonetheless appears to contend that the Superseding Information is irrelevant because "the question the jury should analyze is whether the fabricated evidence would have influenced a jury, not whether the prosecutor was influenced by it." (Pl. Mot. at 7.) However, as Plaintiff acknowledges, "[w]hether the fabricated evidence is likely to influence a jury's decision can be satisfied by showing that the fabricated evidence was material to the prosecutor's case." Hanson v. New York City, No. 15-CV-1447 (MKB), 2018 WL 1513632, at *17 (E.D.N.Y. Mar. 27, 2018) (quoted in Pl. Mot. at 8). The court thus

8

finds that the Superseding Information is relevant to the claims and defenses at issue here. Indeed, this court has already found that the fact that the prosecutor withdrew the Original Complaint and proceeded on the basis of the Superseding Information raises material questions of fact appropriate for resolution by the jury. (M&O Adopting R&R at 15-16.) To the extent that this motion concerns the appropriate instructions for the jury, Plaintiff's concerns may be addressed in jury instructions. The court thus DENIES Plaintiff's motion to preclude the Superseding Information. Cf. Viada v. Osaka Health Spa, Inc., No. 04-CV-2744 (VM) 2005 WL 3435111, at *1 (S.D.N.Y. Dec. 12, 2005) (denying "vague" motions in limine because "the Court is unable to determine, with any degree of certainty, whether the [evidence] sought to be excluded from the trial would be inadmissible under any of the provisions of the Federal Rules of Evidence").

### C.   Evidence of Plaintiff's Nexus to the Apartment

Plaintiff states that he moves to preclude Defendant from introducing evidence showing that there was independent probable cause for his arrest on April 19, 2013. (Pl. Mot. at 9-13.) While it is true that "probable cause is no defense to a denial of the right to a fair trial claim," Garnett, 838 F.3d at 278, Plaintiff makes clear that he seeks to preclude any evidence of "plaintiff's connection to the subject apartment, his prior arrests there or his possessions kept there" (id. at 13). In short, Plaintiff seeks to preclude Defendant's evidence showing Plaintiff's "nexus to the location of the arrest." (Id.)   However, as discussed above, the court finds that the jury cannot determine whether the allegedly fabricated statements were "material" absent an understanding of the "other inculpatory evidence" that would have been presented to the petit jury. This includes evidence concerning Plaintiff's connection to the Apartment.   Plaintiff's motion is therefore DENIED. As stated above, Defendant may elicit testimony about the

November and December Arrests, but Defendant may _not_ inquire into the reason for those arrests.

### D.      Specific Exhibits

Plaintiff seeks to preclude the introduction of certain exhibits identified by the Defendant in the JPTO. (Pl. Mot. at 13-17.) The court takes the arguments in turn.

#### 1.      The Complaint, Amended Complaint, and Deposition Transcripts (Def. Exs. B, C, E, F)

Plaintiff objects to the introduction of the Complaint, Amended Complaint, and deposition transcripts (Def. Exs. B, C, E, F) except for the purposes of impeachment. (Pl. Mot. at 13-14.) Defendant replies that many of the exhibits listed on the JPTO, including the complaint, are listed for the purposes of impeachment only. (Def. Resp. at 7.) The court accordingly RESERVES JUDGMENT on Plaintiff's motion to preclude the introduction of the Complaint, Amended Complaint, and deposition transcripts except for the purposes of impeachment.

#### 2.      Original Complaint (Def. Ex. D)

Plaintiff does not object to the introduction of the Original Complaint, but objects to the version that Defendant has produced because it "has extraneous handwriting on it which is prejudicial and hearsay." (Pl. Mot. at 14.) Defendant does not respond to this argument. Because the court cannot properly evaluate the exhibit at this time—because it does not know what is written on the complaint—it RESERVES JUDGMENT as to whether Defendant's Exhibit D constitutes inadmissible hearsay or presents a risk of unfair prejudice.

3. <u>Search Warrant Application (Def. Ex. S)</u>

Plaintiff seeks to preclude the April 2013 search warrant applied for by Defendant. (Pl. Mot. at 14.) Per the Amended JPTO, however, Defendant no longer intends to introduce the search warrant application at trial. (<u>See</u> Amended JPTO at 5-6.) Plaintiff's motion to preclude its introduction is thus DENIED AS MOOT.

4. <u>Documentation and Materials Relating to the April 19, 2013 Arrest (Def. Exs. H, I, P, V, W, Y, Z)</u>

Plaintiff objects to the introduction of certain police "documents" related to the April 19, 2013 arrest. (Pl. Mot. at 14-15.) These documents, Plaintiff contends, are hearsay, prejudicial, irrelevant, and constitute opinions. (<u>Id.</u>)

Defendant has indicated in the Amended JPTO that he no longer intends to introduce certain of these exhibits. (Def. Resp. 7.) Thus, with respect to Defendant's exhibits W, Y, and Z, Plaintiff's motion is DENIED AS MOOT.

With respect to "[o]ther documents, including various police paperwork relating to the underlying arrest," Defendant explains that he is not sure if each of these documents will be introduced at trial. (Def. Resp. at 7.) The court thus RESERVES JUDGMENT as to Plaintiff's motion to preclude the introduction of Defendant's exhibits H, I, and V.

With respect to the marijuana recovered at the Apartment on April 19, 2013, Defendant argues that the marijuana itself does not constitute hearsay or opinions and that it would have been admissible before the petit jury. (<u>Id.</u> at 8.) Since one of the relevant questions here is what inculpatory evidence against Plaintiff existed outside of the statements that Defendant allegedly fabricated, the court finds that the marijuana meets the "very low" threshold for relevance. <u>White</u>, 692 F.3d at 246 (quoting <u>Al-Moayad</u>, 545 F.3d at 176). Plaintiff does not specifically

address the marijuana or explain why it would be irrelevant or prejudicial. Instead, he lists in a group of exhibits that he describes as "police documentation created after plaintiff's April 19, 2013 arrest apparently in an attempt to bolster the officers testimony at trial which can be expected to be supported by the documentation they created." (Pl. Mot. at 14.) He further describes these documents as "hearsay . . . being used to impugn the plaintiff's character." (Id. at 14-15.) However, the marijuana does not fit this description (and Plaintiff does not appear to be arguing that the marijuana constitutes fabricated evidence since both parties agree that there is no dispute that officers recovered marijuana at the Apartment that day. (id.; Pl. Mot. at 14)). Because Plaintiff has not provided the court with any reason to exclude the marijuana, his motion to exclude Defendant's Exhibit P is DENIED.

5.     Evidence Relating to Prior Arrests (Def. Exs. K, L, M, N, O, S, T, X, AA, BB, and CC)

Plaintiff moves to exclude Defendant's exhibits relating to prior arrests as prejudicial and irrelevant. (Pl. Mot. at 15-16.)

Defendant no longer plans to introduce exhibits K, L, N, O, S, X, AA, or BB. (Amended JPTO at 5-6.) Plaintiff's motion to preclude their introduction is thus DENIED AS MOOT.

With respect to exhibits M (Plaintiff's RAP sheet), T (Statement of Allegations/ Supporting Deposition by Tammy Harris), and CC (Orders of Protection), the court is not able to determine from the parties' briefs whether they may be admissible. The court thus RESERVES DECISION on this motion until trial.

6.     Evidence Relating to a 311 Call (Def. Exs. R & U)

Plaintiff also seeks to exclude Defendant's Exhibits R and U as irrelevant, prejudicial, and "unauthenticated hearsay." (Pl. Mot. at 15-16.) Exhibit R is a report of a call placed to 311

by an individual identifying himself as Charles Patrick. (Def. Resp. at 7.) In the call, Patrick describes his roommate and complains that he is selling drugs in "our apartment." (Id. at 8.) Exhibit U is a complaint report generated from that call. (Id. at 7-8.) This 311 call initiated Defendant's investigation into Plaintiff. (Id. at 8.) Defendant contends that the records are relevant because they constitute the "other inculpatory evidence" that made up the prosecutor's case and would have gone to the petit jury. (Id.) The court agrees.

Defendant further contends that the call and report are subject to the "business records" exception to the prohibition against hearsay. See Fed. R. Evid. 803(6). (Def. Resp. at 8.) Defendant states that the 311 call will not be offered for the truth of the matter asserted but rather to show what Defendant knew at the time. (Id. at 8 n.8).

Defendant may be able to lay the proper foundation for the admission of these records at trial. See United States v. Komasa, 767 F.3d 151, 156 (2d Cir. 2014) ("To lay a proper foundation for a business record, a custodian or other qualified witness must testify that the document was kept in the course of a regularly conducted business activity and also that it was the regular practice of that business activity to make the [record]." (internal quotation marks and citation omitted)). In addition, if Defendant does not offer Exhibits R and U for their truth, they will not constitute hearsay. In that case, there would be no need to proffer them as business records. The court thus DENIES Plaintiff's motion to exclude Defendant's Exhibits R and U at this time. To the extent Plaintiff seeks to argue that the exhibits are being offered for their truth and that they are not business records, Plaintiff can make this argument at trial.

NV Petrus SA v. LPG Trading Corp., No. 14-CV-3138 (NGG), 2017 WL 1905820, at *2 (E.D.N.Y. May 8, 2017)

7. Testimony by David Bernal

Plaintiff seeks to preclude the testimony of Officer David Bernal. (Pl. Mot. at 16-17.) Defendant states that he no longer intends to call Officer Bernal. (Def. Resp. at 8.) Plaintiff's motion to preclude Officer Bernal's testimony is therefore DENIED AS MOOT.

## E.      Opinion Testimony

Plaintiff seeks to preclude Defendant's counsel from eliciting opinion testimony from witnesses. (Pl. Mot. at 17.) Defendant responds that his counsel has no intention of doing so, and likewise expects Plaintiff's counsel to refrain from eliciting opinion testimony from Plaintiff or other witnesses. (Def. Resp. at 9.) Plaintiff's motion to preclude opinion testimony is thus DENIED AS MOOT.

## F.      Evidence Concerning Time Pressure Faced by Police Officers

Plaintiff seeks to preclude Defendant from eliciting testimony concerning "how busy the officers were at the time of the incident in an effort to demonstrate to the jury that the officers are public servants and are under time pressure to deal with incidents so as to be able to respond to other calls." (Pl. Mot. at 19.) Defendant replies that he has no intention of offering such testimony. (Def. Resp. at 9.) Plaintiff's motion to preclude this testimony is therefore DENIED AS MOOT.

## G.      Impeachment Evidence Not Listed on the JPTO

Plaintiff expresses concern that Defendant "may seek to introduce evidence of plaintiff's unknown bad acts of any caliber" that they find on "social media, internet searches and other sources." (Pl. Mot. at 19.) Defendant responds that, in keeping with the court's individual rules, he has no intention of using documents not listed on the JPTO for impeachment purposes. (Def. Resp. 9.) Plaintiff's motion to preclude "irrelevant" and "highly inflammatory impeachment

material" not listed on the JPTO is therefore DENIED AS MOOT without prejudice to Plaintiff's challenges to particular evidentiary proffers at trial.

Defendant notes that he reserves his right to use documents exchanged during discovery but not listed on the JPTO if necessary to combat allegations of recent fabrication. (Def. Resp. at 9 n.9.) Plaintiff may of course challenge particular evidentiary proffers at trial.

### H. Court Appearances Related to More than One Arrest

Defendant contends that Plaintiff should be precluded from proceeding on his denial of a right to a fair trial claim based on the alleged fabrication of evidence in the Superseding Information because he did not suffer any deprivation of liberty as a result of it. (Def. Mem. at 4-5.) Defendant states that Plaintiff made four court appearances after the filing of the Superseding Information, but that each of these appearances were related to charges stemming not just from the April arrest, but also from the November arrest. (Id.) Defendant thus contends that because these appearances were related to more than one arrest, Plaintiff cannot show that he suffered a deprivation of liberty caused by the alleged fabrication in the Superseding Information. (Id.)

Defendant also argues that Plaintiff should be precluded from presenting evidence or eliciting testimony that he suffered a deprivation of liberty when he appeared in court on seven occasions before the Superseding Information was filed. (Def. Mem. at 6-7.) Defendant contends that Plaintiff cannot point to these appearances as deprivations of liberty for the purposes of his fair trial claim because each of these seven appearances pertained to both the April 19, 2013 arrest and the November Arrest. (Def. Mem. at 6-7.)

In his Report and Recommendation ("R&R"), Magistrate Judge Steven Gold explained that, with respect to court appearances related to more than one arrest, "it is not entirely clear that

plaintiff would have been required to appear as frequently if he had only one set of charges pending against him." (R&R at 17-18.) He found that Plaintiff had therefore "raised a question of fact with respect to whether he suffered a deprivation of liberty that was proximately caused by defendant Civil's allegedly false incriminating statements." (Id. at 18.) The same logic applies to Plaintiff's appearances in connection with more than one arrest both before and after the filing of the Superseding Information. Defendant's motions to preclude Plaintiff from proceeding on his claim based on the alleged fabrication in the Superseding Information and from presenting evidence or eliciting testimony that he suffered a deprivation of liberty when he appeared in court on seven occasions before the Superseding Information was filed are therefore DENIED.

## I.     Evidence Relating to Previously Dismissed Claims

Plaintiff originally brought additional claims as a part of this case, including § 1983 claims of false arrest, malicious prosecution, failure to intervene, illegal strip search, and excessive pre-arraignment detention, as well as denial of fair trial claims against the City and . other individual defendants. (See Am. Compl.) After summary judgment, the court dismissed these claims on July 12, 2017. (See M&O Adopting R&R at 26.)

Plaintiff responds that he does not intend to introduce evidence relating to previously dismissed claims. (Pl. Resp. (Dkt. 104) at 6.) Defendant's motion to preclude evidence relating to previously dismissed claims is thus DENIED AS MOOT.[1]

## J.     Testimony of Tammy Harris and Sallica "Lisa" Williams

In the Amended JPTO, Plaintiff indicates that he intends to call Tammy Harris and Sallica "Lisa" Williams. (Amended JPTO at 3.) Ms. Harris is expected to testify "as to her

---

[1] Plaintiff requests that the jury be instructed not to speculate as to any other claims in the case. (Id.) This concern can be addressed in jury instructions.

observations/experience on the date of plaintiff's arrest, knowledge of plaintiff and as to the injuries and damages suffered by plaintiff among other relevant topics." (Id.) Ms. Williams is expected to testify "with respect to her observations and experience on the date of the within incident and arrest and thereafter." (Id.)

Defendant seeks to preclude the testimony of both individuals on the grounds that their testimony is "irrelevant, cumulative, and lacks personal knowledge." (Def. Mem. at 8.) Defendant argues that their testimony has no probative value because neither individual possesses personal knowledge "as to whether [Defendant] forwarded any allegedly fabricated evidence to the District Attorneys Office that allegedly caused plaintiff to suffer a deprivation of liberty." (Id. at 9.) In addition, Defendant states that neither individual were present for the interactions between Defendant and Plaintiff, elements of which were allegedly fabricated in the Original Complaint and Superseding Information. (Id.) Defendant also contends that Ms. Harris cannot testify to Plaintiff's psychological and emotional state following the incident because she has not been proffered as an expert. (Id.)

"A federal district court has the power to exclude evidence in limine only when evidence is clearly inadmissible on all potential grounds" and "[u]nless evidence meets this high standard, evidentiary rulings should be deferred until trial so that questions of foundation, relevancy and potential prejudice may be resolved in proper context." Hennessy, 840 F. Supp. 2d at 554 (quoting Viada, 2005 WL 3435111, at *1).

Plaintiff states that Ms. Harris, while not at the scene of the arrest, was with the Plaintiff at the time when the Original Complaint inaccurately stated he was already in the Apartment. (Pl. Resp. at 6.) In addition, Plaintiff states that Ms. Williams was "present for a portion of the encounter on the date of the incident." (Id.) Thus, their testimony is potentially relevant to

Plaintiff's claim, which involves allegations that Defendant fabricated evidence pertaining to his arrest. Based on the foregoing, the court is unable to assess the basis, relevance, or admissibility of potential testimony from both individuals. Consequently, the court RESERVES DECISION as to this motion in limine.

### K.     Disciplinary Hearings and Prior Lawsuits Against Witnesses

Defendant seeks to preclude Plaintiff from inquiring into Defendant's disciplinary history or personnel files, prior lawsuits involving Defendant, and any disciplinary complaints or lawsuits against non-party NYPD witnesses. (Def. Mem. at 10-13.)

Defendant contends that Plaintiff should be precluded from inquiring about any disciplinary history or personnel files of Defendant pursuant to Federal Rule of Evidence 404(b), which prohibits the admission of evidence of past acts "to prove the character of a person in order to show conformity therewith." (Def. Mem. at 10.) Defendant further argues that, even if it were introduced for a purpose unrelated to character, the danger of unfair prejudice from such evidence outweighs any potential probative value. (Id.)

Plaintiff responds that Defendant's personnel file, Civilian Complaint Review Board ("CCRB") complaints against him, and lawsuits involving him reveal a "pattern of conduct . . . and are admissible as proof of both motive and intent." (Pl. Resp. at 7.) Plaintiff also contends that these prior complaints and lawsuits are "fair impeachment material" of Defendant and Detective Denesopolis (Id. at 6.)[2] Plaintiff provides a list of CCRB complaint and lawsuits involving Defendant and Detective Denesopolis, but does not provide any details about either. (See CCRB Complaints and Civil Lawsuits (Dkt. 104-1) at 1-2.) In particular, the list does not indicate the subject matter or disposition of any of these complaints or lawsuits. (See id.)

---

[2] The court notes that, based on the Amended JPTO, Defendant no longer intends to call Detective Desenopolis.

The probative value of prior allegations or lawsuits involving Defendant or NYPD witnesses depends on the precise circumstances from which they arose as well as their dispositions, but the court has no specific information about the allegations or related actions from which the court may determine their relevance. Accordingly, the court RESERVES DECISION on this motion until trial. See Hennessy, 840 F. Supp. 2d at 556 (reserving decision on motion in limine to preclude evidence of prior lawsuits where parties provided no information about those lawsuits or their dispositions because their probative value "depends on the nature and substance of such actions"); cf. id. at 556 (precluding evidence of CCRB complaints where those complaints remained unsubstantiated); Jean-Laurent v. Wilkinson, No. 05-CV-583 (VM), 2009 WL 666832, at *3 (S.D.N.Y. Mar. 13, 2009) (allowing plaintiff to introduce "disciplinary histories [of defendant corrections officers] only as they relate to complaints that are less than ten years old that were found to be substantiated").

### L. Caption

Defendant requests that the City of New York, Jason Jones, and Luke Denesopolis be removed from the caption of this action. (Def. Mem. at 13.) Plaintiff does not object for the purposes of presenting the matter to the jury, but asks that the caption remain the same "for appellate reasons." (Pl. Resp. at 8.) The parties are directed to use the case caption as it appears in the Amended JPTO. (See Amended JPTO at 1.)

### M. Indemnification

Defendant seeks to preclude Plaintiff from mentioning or introducing evidence that the City may indemnify Defendant. (Def. Mem. at 14-15.) Plaintiff does "not intend to reference indemnification," but states that Defendant "may not 'open the door' to this issue by attempting to elicit sympathy for [Defendant]." (Pl. Mot. at 8.)

19

The court agrees that evidence regarding indemnification would be prejudicial against Defendant, as such evidence might "encourage a jury to inflate its damages award because it knows the government—not the individual defendant[]—is footing the bill." Williams v. McCarthy, No. 05-CV-10230 (SAS), 2007 WL 3125314, at *7 n.46 (S.D.N.Y. Oct. 25, 2007) (quoting Lawson v. Trowbridge, 153 F.3d 368, 379 (7th Cir. 1998)). See also Nunez v. Diedrick, No. 14-CV-4182 (RJS), 2017 WL 4350572, at *2 (S.D.N.Y. June 12, 2017) ("[A]ny references to the City's potential indemnification obligations run the significant risk of unfairly prejudicing Defendant."); Hernandez v. Kelly, No. 09-CV-1576 (TLM) (LB), 2011 WL 2117611, at *6 (E.D.N.Y. May 27, 2011) (finding that evidence regarding the City's potential indemnification of defendant police officers would be prejudicial against the defendants). The court thus GRANTS Defendant's motion. The court will revisit the issue at trial if Plaintiff believes that Defendant has "opened the door" such that the probative value of such evidence increases dramatically.

### N.    NYPD Policies

Defendant also moves to preclude evidence regarding the NYPD Patrol Guide or other NYPD policies, including the "Legal Bulletin Bureau," listed as Plaintiff's Exhibit 9 in the Amended JPTO. (Def. Mem. at 15-17.) Defendant contends that these guides are irrelevant to whether Defendant violated Plaintiff's constitutional rights, especially since there is no evidence in the record to establish that Defendant violated NYPD procedure with respect to his interaction with Plaintiff. (Def. Mem. at 16.) Plaintiff responds that these materials "will be fairly used to assist the jury to determine how an officer confronting a specific situation is guided to respond." (Pl. Resp. at 9.) He explains that the fact that an officer responds differently "could constitute fair evidence [of a constitutional violation] and is therefore admissible evidence subject to a jury

20

instruction that a departure from the above documents is only evidence for the jury to consider rather than a blueprint for a Constitutional violation." (Id.) Plaintiff does not, however, explain how these materials are relevant to his claim.

How Defendant acted during the arrest or "confronted [the] specific situation" is not at issue here. On the contrary, a claim for denial of a fair trial requires proof that "(1) [an] investigating official (2) fabricates information (3) that is likely to influence a jury's verdict, (4) forwards that information to prosecutors, and (5) the plaintiff suffers a deprivation of life, liberty, or property as a result." Garnett v. Undercover Officer C0039, 838 F.3d 265, 279 (2d Cir. 2016) (describing the standard established in Ricciuti v. N.Y.C. Transit Auth., 124 F.3d 123 (2d Cir. 1997)). The court does not see how NYPD guidelines, including Legal Bureau Bulletins, are relevant to any of these elements and Plaintiff has failed to provide any such explanation. The court thus GRANTS Defendant's motion.

### O. References to Defense Counsel as City Attorneys

Defendant asks that his counsel be referred to only as "attorneys for the defendant" or "defense counsel" on the grounds that any reference to them as City attorneys would be unfairly prejudicial because it may lead the jury to believe that Defendant will be indemnified by the City. (Def. Mem. 17-18.) Plaintiff states that he does not intend to refer to defense counsel as City attorneys. (Pl. Resp. at 10.) Defendant's motion is GRANTED.

### P. Specific Damages Amount

Defendant moves to preclude Plaintiff's counsel from mentioning during opening and closing statements or during the testimony of any witnesses a specific dollar figure to compensate Plaintiff for his alleged deprivations of liberty because it is a non-economic damage. (Def. Mem. at 19.) Defendant contends that such suggestions would be improper because it

could "unlawfully anchor the jurors' expectation of a fair award at a place set by plaintiff, rather than by the evidence plaintiff may present." (Id.) Plaintiff's counsel responds that he should be permitted to mention specific figures in his closing statement, "but must do so in the first argument in order for defense counsel to respond if he chooses to do so, before plaintiff's counsel makes his final argument." (Pl. Resp. at 10.) Such suggestions are necessary, he argues, because "it may be difficult for a jury to adequately assess the emotional pain a plaintiff undergoing a fabricated prosecution suffers." (Id. at 11.)

Although the Second Circuit has stated in the context of monetary awards for pain and suffering that "specifying target amounts for the jury to award is disfavored," Consorti v. Armstrong World Industries, Inc., 72 F.3d 1003, 1016 (2d Cir. 1995), vacated on other grounds, 518 U.S. 1031 (1996), the Second Circuit has also stated that "it is best left to the discretion of the trial judge, who may either prohibit counsel from mentioning specific figures or impose reasonable limitations, including cautionary jury instructions." Lightfoot v. Union Carbide Corp., 110 F.3d 898, 912 (2d Cir. 1997).

Defendant's motion is GRANTED IN PART and DENIED IN PART. In light of the Second Circuit's guidance, the Court will not permit plaintiff to submit to the jury a specific dollar amount regarding his non-economic damages, including pain and suffering, in either his opening statement or closing argument. Plaintiff will be permitted, however, to submit to the jury during his closing argument a specific dollar amount regarding other compensable damages he alleges to have suffered as a result of the Defendant's actions, so long as any figure submitted to the jury has a reasonable basis in admissible evidence introduced during Plaintiff's case in chief and Defendant has an opportunity to respond if it chooses to do so. The Court will instruct the jury, as it always does, that statements by lawyers are not evidence or the law that they are to

follow when they begin their deliberations. See Hennessey, 850 F. Supp. 2d at 558 (arrestee in §
1983 action would not be permitted to submit to the jury a specific figure for pain and suffering,
but could suggest a figure pertaining to other alleged compensable damages); Edwards v. City of
New York, No. 08-cv-2199 (TLM), 2011 WL 2748665, at *2 (E.D.N.Y. July 13, 2011)
(plaintiff's counsel could submit a specific figure to the jury during closing statements, but only
in his first argument).

### Q.   Evidence of General Police Misconduct

Defendant moves to preclude the introduction of evidence concerning unrelated
purported instances of police misconduct, events reported in the news media, class actions and
criminal investigations on the grounds that such references would be irrelevant, inadmissible,
and inflammatory. (Def. Mem. at 19.)  Plaintiff responds that he does not intend to offer
irrelevant or inflammatory information to the jury. (Pl. Resp. at 11.)  Defendant's motion is
therefore GRANTED.

## IV.   CONCLUSION

For the foregoing reasons, the parties' motions in limine (Dkts. 97, 102) are GRANTED
IN PART and DENIED IN PART, with ruling on certain questions RESERVED until trial.

SO ORDERED.

s/Nicholas G. Garaufis

Dated: Brooklyn, New York
    April _l_, 2019

NICHOLAS G. GARAUFIS
United States District Judge