UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK

---

DUSHANNE ASHLEY,

           Plaintiff,

vs                                     14-CV-05559 (NGG) (MDG)

THE CITY OF NEW YORK, DETECTIVE JASON JONES, shield # 6490, DETECTIVE MIKE CIVIL, shield # 2114, SERGEANT LUKE DENESOPOLIS, shield #392, POLICE OFFICERS JANE/JOHN DOE(S) #'S 1-10,

           Defendants.

---

**MEMORANDUM OF LAW IN SUPPORT OF
MOTION FOR A DIRECTED VERDICT**

Law Office of David A. Zelman
612 Eastern Parkway
Brooklyn, New York 11225

On the Brief:

    David Zelman, Esq.
    Robert Rickner, Esq.

## TABLE OF CONTENTS

**PRELIMINARY STATEMENT** ..................................................................................................1

**THE FACTS AT TRIAL**..........................................................................................................2

    a.    Mr. Ashley is Arrested ...............................................................................................2

    b.    Detective Civil Signs a Sworn Complaint He Knows Contains False Information .........2

    c.    Mr. Ashley is Prosecuted Based on the False Information ...............................................4

**ARGUMENT**............................................................................................................................6

    I.    DETECTIVE MIKE CIVIL FABRICATED EVIDENCE THAT WAS LIKELY TO INFLUENCE A JURY'S DECISION AND FORWARDED IT TO THE PROSECUTOR. ......7

    II.    DETECTIVE CIVIL'S FABRICATED EVIDENCE CAUSED MR. ASHLEY TO BE DEPRIVED OF HIS LIBERTY. ..................................................................................8

**CONCLUSION** ......................................................................................................................11

## TABLE OF AUTHORITIES

### CASES

*Barnes v. Anderson*, 202 F.3d 150 (2d Cir. 1999) ............................................................................ 8

*Ganek v. Leibowitz*, 874 F.3d 73 (2d Cir. 2017) ............................................................................... 9

*Garnett v. Undercover Officer C0039*, 838 F.3d 265 (2d Cir. 2016) ............................................... 6

*Levy v. City of New York*, 935 F. Supp. 2d 575 (E.D.N.Y. 2013) ..................................................... 8

*Morse v. Fusto*, 804 F.3d 538 (2d Cir. 2015) ................................................................................... 7

*Powers v. Coe*, 728 F.2d 97 (2d Cir. 1984) ....................................................................................... 9

*Reeves v. Sanderson Plumbing Prod., Inc.*, 530 U.S. 133 (2000) ..................................................... 6

*Singer v. Fulton Cty. Sheriff*, 63 F.3d 110 (2d Cir. 1995) ................................................................. 8

*Swartz v. Insogna*, 704 F.3d 105 (2d Cir. 2013) ............................................................................... 8

*Warner v. Orange County Dep't of Probation*, 115 F.3d 1068 (2d Cir.1997) .................................. 9

*Willis v. City of New York*, No. 12-CV-5259, 2015 WL 556884 (S.D.N.Y. Feb. 9, 2015) .............. 8

### STATUTES

42 U.S.C. § 1983 ................................................................................................................................ 8

Federal Rule of Civil Procedure 50 ......................................................................................... 1, 6, 11

N.Y. Crim. Proc. Law § 510.40 ......................................................................................................... 8

## PRELIMINARY STATEMENT

Plaintiff Dushanne Ashley respectfully submits this Memorandum of Law in Support the Motion for a Directed Verdict, under Federal Rule of Civil Procedure 50, in his favor and against Detective Mike Civil on liability for the denial of fair trial, and requests a new trial solely on the issue of damages.

At trial, Detective Mike Civil admitted that he signed a criminal complaint, accusing Dushanne Ashley of possessing marijuana, even though he knew that complaint contained false information. He knew it at the time he signed it, but he sent it to the prosecution anyway. He admitted this at trial. This complaint claimed Mr. Ashley was sitting next to the marijuana when he arrived at the apartment, but Mr. Ashley arrived later. After a year of being prosecuted, including 14 court appearances (3 of which were solely to defend this marijuana charge) the fabrication was exposed. The prosecution tried to rescue the case, but the superseding complaint was dismissed as facially insufficient only a few months later. Thus, there is no question, based on the evidence in the record, that Mr. Ashley had to spend additional time in court because of Detective Ashley's fabrication.

Consequently, Mr. Ashley proved all the elements of his denial of fair trial claim, and a directed verdict should be entered in his favor.

## THE FACTS AT TRIAL

The following facts, taken in the light most favorable to the defendants, were established at trial.[1]

### a. Mr. Ashley is Arrested

The police executed a no-knock warrant at 125 East 18th Street on April 19, 2015, early in the morning. Tr. 331. Mr. Ashley was not at home. Tr. 326. Jose Carlos was sleeping on the floor next to some marijuana. Tr. 325-326. Some of Mr. Ashley's possessions, including a mattress, clothes, and photograph, were also in the living room, and Detective Civil recognized them from two other times he had arrested Mr. Ashley in the apartment. Tr. 333-334.

Mr. Ashley arrived 10-15 minutes later. Tr. 326. Security cameras captured the police entering the apartment, and Mr. Ashley arriving afterwards. Tr. 91-94. A few minutes after Mr. Ashley entered the apartment that morning, he was handcuffed and arrested. Tr. 331.

### b. Detective Civil Signs a Sworn Complaint He Knows Contains False Information

Seven p.m., the same day, Detective Civil spoke with someone at the Early Case Assessment Board for the Kings County District Attorney's Office ("ECAB"). Tr. 335-337. He is not sure if it was a prosecutor or a paralegal. Tr. 337. He told this person all the circumstances surrounding the search and arrest. *Id*.

But when he received a draft complaint, via fax, it contained an error. Tr. 338-339. Instead of saying that Mr. Ashley arrived later, the complaint said that "defendants," meaning

---

[1] The trial transcripts for both days of testimony are attached to the Affidavit of David Zelman, Esq., dated June 28, 2019, and are referred to herein as "Tr. _". The relevant trial exhibits are also attached to Mr. Zelman's Affidavit and are referred to herein by the same exhibit numbers that they were marked with at trial, with Plaintiff using numbers and Defendant using letters "Ex. _".

2

Mr. Ashley and Mr. Carlos, were both sitting next to the marijuana. Tr. 339-340. He knew this was false, but as he readily admitted at trial, he signed it anyway:

> Q Okay. Is this the complaint report that was sent to you?
>
> A Yes.
>
> Q When you received it, did you read it?
>
> A I did.
>
> Q Did you sign it?
>
> A I did.
>
> Q And did you notice if there was any mistake in it?
>
> A I did. There was a slight discrepancy I felt that I saw in there, yes.
>
> Q What was the discrepancy that you saw?
>
> A That it says the defendants, plural, were in the room next to the marijuana.
>
> Q Okay. Was that accurate?
>
> A No, it wasn't.
>
> ***
>
> Q What was the mistake that you noticed?
>
> A Okay. That it said defendants, plural, not singular.
>
> Q Defendants, plural, as to what?
>
> A As to the location -- being in the room next to the marijuana.
>
> Q Okay. Who was that accurate for?
>
> A Just [co-defendant] Jose Carlos.

Tr. 339-340.

> Q They call you. You discuss the arrest. Then they faxed you a criminal court complaint to sign?
>
> A Correct, sir.

3

> Q You have to review that complaint and sign it if it's accurate, correct?
>
> A Correct.
>
> Q Now, in this case you admit that you realized before you signed it that it wasn't accurate, right?
>
> A That it wasn't -- I wouldn't say accurate. In that portion, that specific -- that specific portion wasn't accurate.
>
> Q Right. So you signed it even though you realized that it wasn't accurate, right?
>
> A Correct, sir.

Tr. 355-356.

And he never bothered to call the prosecutor to tell her that the complaint had a mistake in it; he just needed to sign it so he could be finished with the arrest:

> A Did I have to sign it?
>
> Q Yeah.
>
> A Well, in order to be done with my arrest, yes.
>
> Q Could you have called her and said, It's wrong?
>
> A I -- I could have, but I explained to her how I knew it
>
> was his room, so I thought I accurately -- you know, correctly
>
> demonstrated to her and explained to her the circumstances.
>
> Q You could have called her but you didn't, right?
>
> A No, sir.

Tr. 357.

### c. Mr. Ashley is Prosecuted Based on the False Information

Mr. Ashley was prosecuted, based on the complaint signed by Detective Civil, for marijuana possession (the "2013 Case"). Tr. 82-84; Ex. 1. This was the third time Mr. Ashley had been arrested in the apartment, and a charge for one of those prior arrests – based on possession of a "[l]ittle bit of cocaine residue on a razor blade" and some accessories – was still

4

pending (the "2012 Case"). Tr. 100-101, 157. Mr. Ashley had made court appearances in the 2012 Case before being arrested again. Tr. 136. Afterwards, the 2013 Case tracked the 2012 Case, meaning the criminal court would schedule court appearances for both cases on the same day. Tr. 100-101, 142-143. Over the course of a year, Mr. Ashley made 14 court appearances for the 2013 Case. 11 of those 14 appearances were for both the 2012 Case and 2013 Case together on the same day, although the judge would not actually hear both cases simultaneously – the proceedings, such as motions, were heard separately. Tr. 100-101, 142. 3 of the court appearances were solely for the 2013 Case (before the superseding indictment). Tr. 142-143. Each appearance could take as long as 4 hours, because Mr. Ashley's public defender was busy with other clients. Tr. 99.

Eventually, Mr. Ashley's defense attorney obtained the surveillance video that proved the complaint had false information because the video showed the police arriving before Mr. Ashley; he could not have been sitting next to Mr. Carlos and the marijuana when Detective Civil first arrived. Tr. 89-91.

Mr. Ashley's attorney confronted the prosecution with the video, and in response, on April 30, 2014, they filed a superseding indictment that matched the facts that Detective Civil claims he gave the ECAB office in the beginning. Tr. 99, 140; Ex. A. Mr. Ashley's criminal attorney made an oral motion to dismiss the superseding complaint as facially insufficient. Tr. 113; Ex. 5. The criminal court judge agreed but gave the prosecution a chance to file a third complaint. Tr. 126-128. The prosecution did not, and the 2013 case was dismissed and sealed pursuant to CPL § 160.50. Tr. 131-132; Ex. 6.

Up until that point, Mr. Ashley had been offered a plea bargain: he could plead to a violation for each, but not the 2012 Case alone. Tr. 233. After the 2013 Case was dismissed, he

agreed to plead to a violation for the 2012 Case, and the prosecution accepted at the next court appearance. Ex. 5.

## ARGUMENT

Under Federal Rule of Civil Procedure 50(b), the court "must draw all reasonable inferences in favor of the nonmoving party, and it may not make credibility determinations or weigh the evidence." *Reeves v. Sanderson Plumbing Prod., Inc.*, 530 U.S. 133, 150–51 (2000). But the court should also "review the record as a whole," "disregard all evidence favorable to the moving party that the jury is not required to believe," and "give credence to the evidence favoring the nonmovant as well as … evidence supporting the moving party that is uncontradicted and unimpeached, at least to the extent that that evidence comes from disinterested witnesses." *Id*.

Thus, Mr. Ashley should be granted a directed verdict on liability for his fabricated evidence claim if he can prove, through the testimony of Detective Mike Civil, and the uncontradicted testimony of Mr. Ashley's criminal attorney, who is a disinterested witness, that he has met all the evidence of a denial of fair trial (and fair prosecution) claim. The elements are: "an (1) investigating official (2) fabricates evidence (3) that is likely to influence a jury's decision, (4) forwards that information to prosecutors, and (5) the plaintiff suffers a deprivation of liberty as a result." *Garnett v. Undercover Officer C0039*, 838 F.3d 265, 277 (2d Cir. 2016).

Mr. Ashley, through his attorney, made a detailed directed verdict motion at trial. Tr. 396-397. Now, as required under Federal Rule of Civil Procedure 50, he supplements that oral motion with this written one.

6

**I.    DETECTIVE MIKE CIVIL FABRICATED EVIDENCE THAT WAS LIKELY TO INFLUENCE A JURY'S DECISION AND FORWARDED IT TO THE PROSECUTOR.**

As this Court already found in the Memorandum & Order on Summary Judgment (Dkt. No. 67, pg. 16), and in the Memorandum & Order on the Motion to Reconsider, decided right before trial (Dkt. No. 87, pg. 6), there is no issue of fact as to the first four elements of the denial of fair trial claim. Detective Civil was investigating the crime, and was actually present when the marijuana at issue was found. And he admits to fabricating evidence and forwarding it to the prosecution.

Thus, while Detective Civil testified he did not actually draft the complaint, he still signed it under oath, knowing that it was inaccurate, and never called the prosecutor to tell her about the error.[2] This is an affirmative fabrication, given that Detective Civil signed it, swearing it was true. But it was also a fabrication of omission when he failed to tell the prosecution of the error, which is just as much a constitutional violation. *See Morse v. Fusto*, 804 F.3d 538, 548 (2d Cir. 2015).

And this fabrication was material. Mr. Ashley was not there when Detective Civil arrived in the apartment and found the baggies of marijuana next to Mr. Carlos. Consequently, as the criminal court judge later found when he dismissed the superseding indictment (Ex. 5), the facts that Detective Civil claims he told the prosecutor or paralegal beforehand were not enough for a facially sufficient complaint.

---

[2] Detective Civil's claim that the prosecution wanted the complaint to include false statements is not supported by the record, is rank speculation, and should be disregarded.

## II. DETECTIVE CIVIL'S FABRICATED EVIDENCE CAUSED MR. ASHLEY TO BE DEPRIVED OF HIS LIBERTY

Even a single court appearance is a deprivation of liberty, and a constitutional violation if caused by fabricated evidence. "[A]ny post-arraignment deprivations of liberty (such as being bound-over for trial) might satisfy this constitutional requirement." *Singer v. Fulton Cty. Sheriff*, 63 F.3d 110, 117 (2d Cir. 1995). In fact, the Second Circuit has held that consistently "that a post-arraignment defendant who is obligated to appear in court in connection with criminal charges whenever his attendance is required suffers a Fourth Amendment deprivation of liberty." *Swartz v. Insogna*, 704 F.3d 105, 112 (2d Cir. 2013) (quotations omitted). Thus, even a single post-arraignment court date is a deprivation of liberty under *Swartz*. *See Willis v. City of New York*, No. 12-CV-5259, 2015 WL 556884, at *8 (S.D.N.Y. Feb. 9, 2015). One court even found that simply having charges pending post-arraignment is a deprivation of liberty because the criminal defendant must still make themselves available to the court. *See Levy v. City of New York*, 935 F. Supp. 2d 575, 589 (E.D.N.Y. 2013); N.Y. Crim. Proc. Law § 510.40 ("Upon ordering that a principal be released on his own recognizance, the court must direct him to appear in the criminal action or proceeding involved whenever his attendance may be required and to render himself *at all times* amenable to the orders and processes of the court." (emphasis added)).

And under 42 U.S.C. § 1983, causation follows ordinary tort principles. "Although proximate causation in the § 1983 context is a question of federal law, in determining the meaning of the concept we look to those state tort analogs, because the 'Supreme Court has made it crystal clear that principles of causation borrowed from tort law are relevant to civil rights actions brought under section 1983.'" *Barnes v. Anderson*, 202 F.3d 150, 158 (2d Cir. 1999) (quoting *Warner v. Orange County Dep't of Probation*, 115 F.3d 1068, 1071 (2d

8

Cir.1997). Thus, under § 1983, defendants are "responsible for the natural consequences of their actions," including "those consequences attributable to reasonably foreseeable intervening forces, including the acts of third parties." *Warner*, 115 F.3d at 1071 (2d Cir. 1996) (quotations omitted); *see also Powers v. Coe*, 728 F.2d 97, 105 (2d Cir. 1984) (finding that there is causation unless the deprivation of liberty is "too remote a consequence" of the wrongful acts).

Here, the uncontradicted and unimpeached facts in evidence prove that Detective Civil's fabrication set the 2013 Case in motion and caused Mr. Ashley to make *at least one* court appearance. There are two ways to analyze causation in a denial of fair trial claim, and the decision as to which is correct is a matter of law for this Court, not the jury. The first is to look at what actually happened, focusing on what the fabricated evidence actually set in motion. The second is to imagine what would have happened had the fabricated evidence never existed – recreating a world where the constitution was not violated and then looking to see if the plaintiff would have been deprived of liberty anyway.

The first analysis, Plaintiff contends, is the correct one. Mr. Ashley's prosecution was the natural consequence of Detective Civil's fabrication. And if the fabrication is deleted, there is no allegation in the complaint regarding dominion and control of the marijuana, and the case would have been dismissed at arraignment (or never started at all). *See Ganek v. Leibowitz*, 874 F.3d 73, 91 (2d Cir. 2017) (looking to whether legal process was sufficient if the fabrication was deleted). Instead, Mr. Ashley made 14 court appearances, 3 he would not have had to make at all, and 11 where he had to spend additional (albeit brief) time appearing for two charges instead of one. This analysis most closely follows the "natural consequences" standard.

But even if Detective Civil is allowed to defend this case by arguing that in an alternative world – one where he did not knowingly fabricate evidence – Mr. Ashley still would have

9

suffered an equal deprivation of liberty, a directed verdict should still be granted. The facts unequivocally prove that Mr. Ashley would have appeared in court fewer times. In total, Mr. Ashley went to court approximately 18 times in the 2013 Case (14 before the superseding indictment, and approximately 4 afterwards). If the prosecutor had started the case with the superseding indictment, he would have only gone to court approximately 4 times before the complaint was dismissed as facially insufficient.

And further, he would have made fewer appearances on the 2012 Case. Mr. Ashley was not allowed to plead to them separately. He was offered a violation on each, and he agreed to plead to a violation in the 2012 Case the day the 2013 Case was dismissed.

Taken together, no reasonable jury could believe that Mr. Ashley would have had to appear in court the same number of times, for the same amount of time, even without the fabrication. (Notably, there was no testimony from either prosecutor.) The extent of the deprivation of liberty can be considered in assessing damages, uncontradicted and unimpeached evidence proves that Mr. Ashley suffered at least *some* deprivation of liberty, and therefore a directed verdict is warranted as to liability on the denial of a fair trial claim.

## CONCLUSION

For the reasons stated above, a directed verdict should be entered in favor of Mr. Ashley on liability for his denial of a fair trial claim, and against Detective Civil, under Federal Rule of Civil Procedure 50, and requests a new trial solely on the issue of damages.


Dated:  New York, New York
        June 28, 2019

        Law Office of David A. Zelman

        By:          /s/

        David Zelman

        709 Eastern Parkway
        Brooklyn, New York 11213
        Phone: (718) 604-3072

        *Attorney for Plaintiff*

        Rob Rickner, Rickner PLLC
        On the Brief