UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
------------------------------------------------------------------X
DUSHANNE ASHLEY

                     Plaintiff,

         -against-

DETECTIVE MIKE CIVIL, shield #2114,

                     Defendant.
------------------------------------------------------------------X

**MEMORANDUM & ORDER**

**14-CV-5559 (NGG) (SMG)**

NICHOLAS G. GARAUFIS, United States District Judge.

Plaintiff Dushanne Ashley brought this action under 42 U.S.C. § 1983 against Defendant Detective Mike Civil of the New York City Police Department alleging that he was denied his right to a fair trial. (See Am. Joint Pretrial Order ("JTPO") (Dkt. 108) at 2.) The case proceeded to trial, during which Plaintiff asserted a claim of denial of his right to a fair trial. (Id.) At the close of the defense case, the court denied Plaintiff's motion for a directed verdict. (See Trial Tr. (undocketed) at 397:25.) On April 3, 2019, after three days of trial, including deliberations, the jury rendered a verdict in favor of Defendant. (See Jury Verdict Sheet (Dkt. 121).)

Plaintiff now renews his motion for judgment as a matter of law pursuant to Federal Rule of Civil Procedure 50. (See Not. of R. 50(b) Mot. (Dkt. 126); Pl. Mem. in Supp. of R. 50(b) Mot. ("Mem.") (Dkt. 126); Aff. in Supp. of R. 50(b) Mot. (Dkt. 127).) He asks the court to enter a directed verdict on the question of liability and requests a new trial "solely on the issue of damages."[1] (See Mem. at 11.) Defendant opposes Plaintiff's motion. (See Opp'n (Dkt. 130).) For the reasons set forth below, Plaintiff's motion is DENIED.

---

[1] Although Plaintiff "requests a new trial solely on the issue of damages" (Mem. at 11; Reply at 2), he states that his motion is made under Federal Rule of Civil Procedure 50, his briefs do not mention Federal Rule of Civil Procedure 59, which concerns motions for a new trial, and he sets forth no independent arguments as to why he is entitled to a

1

I.  **BACKGROUND**

The court assumes familiarity with the background of this case. See generally Ashley v. Civil, No. 14-CV-5559 (NGG), 2019 WL 1441124 (E.D.N.Y. Apr. 1, 2019) (addressing motions in limine); Ashley v. City of New York, No. 14-CV-5559 (NGG) (SMG), 2017 WL 9487192 (E.D.N.Y. Apr. 17, 2017) (recommending that the court grant in part and deny in part Defendants' motion for summary judgment and deny Plaintiff's motion for summary judgment), report & recommendation adopted, 2017 WL 2972145 (E.D.N.Y. July 12, 2017), reconsideration denied, 2018 WL 6419951 (E.D.N.Y. Dec. 6, 2018). Only those facts necessary for disposition of the instant motion are set forth here.

On September 22, 2014, Plaintiff commenced this action. (Compl. (Dkt. 1).) Plaintiff brought multiple claims under 42 U.S.C. § 1983 stemming from his April 19, 2013 arrest at 125 East 18th Street, Apartment 5I, Brooklyn, New York (the "Apartment") and subsequent prosecution for criminal possession of marijuana. This Apartment was owned by a man named Charles Patrick. (Trial Tr. at 238:1-12.) Plaintiff lived in a room that he rented from Patrick starting in January 2012. (Trial Tr. at 237:23-25, 238:24-239:5.) Before the April 19, 2013 arrest, Plaintiff had been arrested twice inside the Apartment for criminal possession of marijuana. (See Trial Tr. at 246:21-247:4.) Defendant Civil was present for both prior arrests. (See id. 305:12-14; 376:22-377:3.) Plaintiff claims, however, that by April 19, 2013, he was no longer living at the Apartment, and was instead living at his girlfriend's apartment. (Trial Tr. at 250:23-251:1.)

---

new trial on damages. Accordingly, the court does not treat Plaintiff's motion as one for a new trial under Federal Rule of Civil Procedure 59.

2

On April 19, 2013, Defendant Civil executed a search warrant at the Apartment. (see id. at 327:2-3.) During his search, Defendant Civil found 18 small plastic bags of marijuana in the living room of the Apartment. (See id. at 323:4-19, 325:5-7.) Several of Plaintiff's possessions, including an air mattress bed, dresser, clothing, weights, a photograph of him with a woman, and a cat, were in the Apartment. (See id. at 249:2-250:1, 322:9-14, 333:24-334:7.) Defendant also stated that he knew the room where the marijuana was found to be Plaintiff's bedroom based on "[his] investigation and previous search warrants." (Id. at 333:15-16.) At the time the search warrant was executed, there was an individual sleeping on the floor in a sleeping bag next to Plaintiff's bed. (Id. at 334:3-4.)

Plaintiff was not present at the Apartment when the search was executed early in the morning on April 19, 2013, but he arrived shortly thereafter while officers were still in the Apartment. (See id. at 326:15-19.) He was placed under arrest, along with Charles Patrick and Jose Carlos, the individual who had been sleeping on the floor. (See id. at 325:14-15.)

The criminal complaint signed by Defendant on April 19, 2013 (the "Original Complaint") alleged that Plaintiff committed the offenses of Criminal Possession of Marijuana in the Fourth Degree, Criminal Possession of Marijuana in the Fifth Degree, and Unlawful Possession of Marijuana. (See PX 1; DX A; Trial Tr. at 132:11-14.) A person is guilty of criminal possession of marijuana in the fourth degree when he "knowingly and unlawfully possesses" more than two ounces of marijuana. N.Y. Penal Law § 221.15. A person is guilty of criminal possession of marijuana in the fifth degree when he "knowingly and unlawfully possesses" more than 25 grams of marijuana. Id. § 221.10. Finally, a person is guilty of the lesser charge of unlawful possession of marijuana when he "knowingly and unlawfully possesses" marijuana. Id. § 221.05. To "possess" marijuana means to "have physical possession

or otherwise exercise dominion or control" over the marijuana. Id. § 10.00(8). Knowing possession of marijuana (or other contraband) can be inferred where an individual has "dominion or control" over the area where the drugs are found. Chalmers v. Mitchell, 73 F.3d 1262, 1272 (2d Cir. 1996) (discussing N.Y. Penal Law § 10.00(8)).

The Original Complaint stated that Detective Civil "observed [Plaintiff and Jose Carlos] in possession of approximately two ounces of marihuana, in that the informant did recover said quantity of marihuana from the floor inside a room in which [Plaintiff and Jose Carlos] were sitting." (PX 1; see Trial Tr. at 140:4-8.) The prosecution filed a superseding information (the "Superseding Complaint") dated April 30, 2014 that differed from the Original Complaint only in its statement that Plaintiff arrived after Defendant:

> "[Detective Civil] observed [Plaintiff and Jose Carlos] in possession of approximately two ounces of marihuana, in that [Detective Civil] entered said location and observed defendant Jose Carlos on the floor and defendant Dushanne Ashley did enter said location shortly thereafter and state in sum and substance, see this is what happens when you let strange people into our apartment, and [Detective Civil] did recover said quantity of marihuana from the floor."

(DX A; see Trial Tr. at 139:23-140:8, 102:19-20, 141:4-6.) Plaintiff appeared in court approximately four times in connection only with this arrest, and eleven times in connection with this arrest and others. (See Trial Tr. at 232:4-8, 268:18-20.)

The state court judge ultimately dismissed the Superseding Complaint as "facially insufficient." (Trial Tr. at 124:17 (Chad LaVeglia testifying).) She stated: "Just because it is your home, you cannot control what people bring into your home, and obviously they said they see somebody with the stuff and he comes in subsequently." (Id. at 124:13-16 (Chad LaVeglia testifying).)

## II. LEGAL STANDARD

Federal Rule of Civil Procedure 50 "imposes a heavy burden on a movant, who will be awarded judgment as a matter of law only when 'a party has been fully heard on an issue during a jury trial and the court finds that a reasonable jury would not have a legally sufficient evidentiary basis to find for the party on that issue.'" Cash v. Cty. of Erie, 654 F.3d 324, 333 (2d Cir. 2011) (quoting Fed. R. Civ. P. 50(a)(1)). "That burden is particularly heavy where . . . the jury has deliberated in the case and actually returned its verdict in favor of the nonmovant." Id. (internal quotation marks and citation omitted). "In such circumstances, a court may set aside the verdict only if there exists such a complete absence of evidence supporting the verdict that the jury's findings could only have been the result of sheer surmise and conjecture, or the evidence in favor of the movant is so overwhelming that reasonable and fair minded persons could not arrive at a verdict against it." Id. (internal quotation marks and citation omitted). "[I]n entertaining a motion for judgment as a matter of law, the court should review all of the evidence in the record. In doing so, however, the court must draw all reasonable inferences in favor of the nonmoving party, and it may not make credibility determinations or weigh the evidence." Reeves v. Sanderson Plumbing Prods., Inc., 530 U.S. 133, 150 (2000) (citations omitted).

## III. DISCUSSION

Claims of denial of the right to a fair trial "based on fabrication of information" arise in cases where "(1) [an] investigating official (2) fabricates information (3) that is likely to influence a jury's verdict, (4) forwards that information to prosecutors, and (5) the plaintiff suffers a deprivation of life, liberty, or property as a result." Garnett v. Undercover Officer C0039, 838 F.3d 265, 279 (2d Cir. 2016) (emphasis added) (describing the standard established in Ricciuti v. N.Y.C. Transit Auth., 124 F.3d 123 (2d Cir. 1997)). As this court noted in Ashley,

5

2018 WL 6419951, at *3, "[t]he manufacturing of false evidence 'in and of itself . . . does not impair anyone's liberty, and therefore does not impair anyone's constitutional right.'" Id. (quoting Zahrey v. Coffey, 221 F.3d 342, 348 (2d Cir. 2000) (citation and quotation marks omitted)).

Although Plaintiff argues that he proved all necessary elements of his denial of a fair trial claim (see Mem. at 1), the core of the dispute between the parties is over the third and fifth elements of the denial of fair trial claim as framed by the Second Circuit in Garnett. (See Mem.; Opp'n at 1-7.) First, the parties dispute whether the jury could have found that the false statement contained in the original criminal complaint—that Plaintiff was already sitting in the room where the marijuana was found at the time the search was executed—constituted evidence "likely to influence a jury." Second, the parties dispute whether there was sufficient evidence from which the jury could have concluded that Plaintiff suffered a deprivation of liberty "as a result" of that false information.[2]

### A. Fabrication of Evidence

"Whether [] fabricated evidence is likely to influence a jury's decision can be satisfied by showing that the fabricated evidence was material to the prosecutor's case." Hanson v. N.Y.C., No. 15-CV-1447 (MKB), 2018 WL 1513632, at *17 (E.D.N.Y. Mar. 27, 2018) (citing Garnett,

---

[2] The parties also dispute whether, under the Supreme Court's recent decision in McDonough v. Smith, Plaintiff must show that his prosecution ended with a favorable termination. (Opp'n at 1, 7-9.) See McDonough v. Smith, 139 S. Ct. 2149, 2158 (2019) (holding that a claim "asserting that fabricated evidence was used to pursue a criminal judgment" accrues when the criminal proceedings against a defendant terminate in his favor); Harper v. Va. Dep't of Taxation, 509 U.S. 86, 97 (1993) (holding that when the Supreme Court "applies a rule of federal law to the parties before it, that rule is the controlling interpretation of federal law and must be given full retroactive effect in all cases still open on direct review and as to all events, regardless of whether such events predate or postdate our announcement of the rule"). Because, as discussed below, the court finds that the evidence adduced at trial provided a sufficient basis for a reasonable jury to find that Plaintiff failed to prove that the false statement made by Defendant was likely to influence a jury and/or that this statement was not the proximate cause of Plaintiff's deprivation of liberty, the court does not consider the relevance of a favorable termination analysis to his claim.

6

838 F.3d at 277; Ricciuti, 124 F.3d at 129-30). In Garnett, the Second Circuit indicated that fabricated evidence is material when it may affect "the prosecutor's decision to pursue charges rather than to dismiss the complaint without further action" or could influence "the prosecutor's . . . assessments of the strength of the case." See Garnett, 838 F.3d at 277.

Plaintiff argues that the evidence here showed that Defendant forwarded fabricated evidence to a prosecutor—in the form of a statement that Plaintiff was present in the apartment where marijuana was found at the time the search warrant was executed—and that this fabrication was "certainly material." (Mem. at 7.) He argues that "[b]eing seen sitting next to drugs is potent evidence of dominion and control" (Reply (Dkt. 132) at 3), and contends that dismissal of the Superseding Complaint as facially insufficient shows that the other facts linking Plaintiff to the bedroom and the marijuana were "not enough for a facially sufficient complaint" (Mem. at 7).

The court finds, however, that there was a legally sufficient evidentiary basis for a reasonable jury to conclude that Defendant's false statement was not material to the prosecutor's case or otherwise likely to influence a jury. For example, during the trial, witnesses testified that Plaintiff lived in the apartment where the marijuana was found (see Trial Tr. at 56:13 (neighbor stating that Plaintiff "lives in the building")), that Plaintiff's belongings, including his dog and cat, were present in the room on April 19, 2013 (see Trial Tr. 217:15-22, 218:12-21, 241:16-17, 321:13-322:17), and that Plaintiff paid rent of $80 per week[3] (Trial Tr. 251:2-8). Defendant also testified that he informed an assistant district attorney or paralegal, who was drafting the criminal

---

[3] Plaintiff testified that he paid this $80 per week to Charles Patrick so that he could keep his cat at the Apartment, but that he himself was no longer living there. (See Trial Tr. at 250:18-251:11.) In light of the evidence before it, however, including that Plaintiff went to the Apartment every day to feed his cat and take care of his litter box, the jury may not have found Plaintiff's explanation—that the rent was only on behalf of his cat and that he himself had moved out—credible.

7

complaints, that he believed Plaintiff was connected to the marijuana found in the Apartment for multiple reasons: (1) based on the two prior search warrants executed at the Apartment, he understood Plaintiff to live there; (2) Plaintiff made the following statement to Charles Patrick in front of Defendant: "something like, This is why we don't let strangers into our—into our apartment"; (3) Plaintiff still had clothes at the Apartment; (4) there was a photograph of Plaintiff and a woman on the dresser in the Apartment; and (5) Defendant was aware of a 311 complaint made by Charles Patrick to the effect that his roommate, whose description matched that of Plaintiff, refused to move out and was selling drugs in the Apartment. (See Trial Tr. at 312:20-23, 322:9-14, 328:19-329:1; 337:15-24.) The jury also heard testimony that the prosecution filed the Superseding Complaint without the false statement instead of dismissing the case against Plaintiff. (Id. at 141:14-17, 23-25, 142:1-4.)

In other words, the jury heard considerable testimony regarding Plaintiff's connection to the Apartment and the bedroom where the drugs were found. The jury thus had a legally sufficient basis from which it could reasonably conclude that Defendant's statement that Plaintiff was already present in the apartment at the time the search warrant was executed was not material to the prosecution's case and that such statement was not likely to influence a jury.

**B. Causation**

Moreover, the evidence adduced at trial provided a sufficient basis from which a jury could conclude that Defendant's allegedly false statement did not cause Plaintiff's deprivation of liberty. See Ashley, 2018 WL 6419951, at *3 (explaining that "Plaintiff must still show his deprivation of liberty came 'as a result' of the false statement"); see also Garnett, 838 F.3d at 279-80 (noting that in fair trial claims based on fabrication of information require a finding that plaintiff suffers a deprivation of life, liberty, or property "as a result" of false statement);

Caravalho v. City of New York, 732 F. App'x 18, 24 (2d Cir. 2018) (summary order) (rejecting fair trial rights claim because of the plaintiff's failure to prove detention was a result of fabricated paperwork); Bridgeforth v. City of New York, No. 16-CV-273 (WHP), 2018 WL 3178221, at *8 (S.D.N.Y. June 28, 2018) (finding a "triable issue" over whether defendant's "actions, rather than other processes, that produced" a deprivation of liberty); Walker v. City of New York, No. 11-CV-314 (CBA), 2014 WL 12652345, at *9 (E.D.N.Y. Sept. 3, 2014) ("The causation requirement is only met if there is sufficient evidence for a jury to determine that the fabricated evidence, as opposed to evidence that supported a finding of probable cause, caused the plaintiff to be deprived of his liberty."); Deskovic v. City of Peekskill, 673 F. Supp. 2d 154, 161 (S.D.N.Y. 2009) ("[I]t is common ground that in any Section 1983 case, a 'plaintiff must prove that the defendant's action was a proximate cause of the plaintiff's injury.'") (quoting Gierlinger v. Gleason, 160 F.3d 858, 872 (2d Cir. 1998)). "To be a proximate cause, the misconduct must constitute a substantial factor in bringing about the harm." Nnodimele v. Derienzo, No. 13-CV-3461 (ARR), 2016 WL 337751, at *14 (E.D.N.Y. Jan. 27, 2016) (quotation marks omitted) (citing Hydro Investors, Inc. v. Trafalgar Power Inc., 227 F.3d 8, 15 (2d Cir. 2000)).

As explained above, the jury heard considerable evidence regarding Plaintiff's connection to the Apartment and the room where the marijuana was found. The jury also heard evidence to the effect that the prosecution moved forward with the case even after the false statement was removed from the complaint. (See Trial Tr. at 141:14-17, 23-25, 142:1-4.) The court thus finds that the evidence presented at trial formed a legally sufficient basis for a reasonable jury to find that Defendant's statement that Plaintiff was already in the room at the time the search warrant was executed was not a proximate cause—i.e., "a substantial factor in

9

bringing about," see id.—any deprivations of liberty that Plaintiff suffered in connection with his April 19, 2013 arrest.

* * *

In sum, the court finds that there was legally sufficient evidence for the jury to find for Defendant. Plaintiff has failed to carry his "particularly heavy" burden of showing that there was "such a complete absence of evidence supporting the verdict that the jury's findings could only have been the result of sheer surmise and conjecture, or [that] the evidence in favor of [Plaintiff] is so overwhelming that reasonable and fair minded persons could not arrive at a verdict against it." Cash, 654 F.3d at 333 (citation omitted).

## IV. CONCLUSION

For the foregoing reasons, the court DENIES Plaintiff's motion under Federal Rule of Civil Procedure 50 for judgment as a matter of law (Dkt. 126).

SO ORDERED.

s/Nicholas G. Garaufis

Dated: Brooklyn, New York
July 27, 2019

NICHOLAS G. GARAUFIS
United States District Judge