UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK

| | |
|---|---|
| DUSHANNE ASHLEY,<br><br>        Plaintiff,<br><br>vs<br><br>DETECTIVE MIKE CIVIL, shield # 2114,<br><br>        Defendant. | 14-CV-05559 |

MEMORANDUM OF LAW IN SUPPORT OF
PLAINTIFF'S MOTIONS IN LIMINE

Rickner PLLC
14 Wall Street, Suite 1603
New York, New York 10005

On the Brief:

    Robert Rickner, Esq.

**TABLE OF CONTENTS**

**FACTUAL BACKGROUND** ............................................................................................................ 2

    a.    Mr. Ashley is Arrested ............................................................................................. 2

    b.    Detective Civil Signs a Sworn Complaint He Knows Contains False Information ....... 2

    c.    Mr. Ashley is Prosecuted Based on the False Information .......................................... 4

**ARGUMENT** .................................................................................................................................. 5

    I.    DETECTIVE CIVIL SHOULD BE PRECLUDED FROM INTRODUCING EVIDENCE OF PLAINTIFF'S ARREST AND CONVICTION HISTORY .................................. 5

    II.    THE SPRINT REPORT SHOULD BE EXCLUDED FOR ALL PURPOSES. .................. 6

    III.    MR. ASHLEY AND OTHER WITNESSES SHOULD NOT BE QUESTIONED ABOUT HIS FINANCES. ................................................................................................... 6

    IV.    EVIDENCE USED TO SUPPORT THE SEARCH WARRANT AND JUSTIFY THE SEARCH SHOULD BE EXCLUDED FOR ALL PURPOSES. .................................. 7

    V.    DETECTIVE CIVIL'S "FLY SHEET" IN HIS MEMOBOOK SHOULD BE EXCLUDED UNLESS HE CAN BRING IN THE ORIGINAL DOCUMENT. ........................ 7

    VI.    DETECTIVE CIVIL SHOULD NOT BE ALLOWED TO FALSELY IMPLY THAT HE WILL PAY A JUDGMENT HIMSELF. .............................................................. 8

**CONCLUSION** ............................................................................................................................. 9

## FACTUAL BACKGROUND

### a. Mr. Ashley is Arrested

The police executed a no-knock warrant at 125 East 18th Street on April 19, 2015, early in the morning. Mr. Ashley was not in the apartment at the time. Jose Carlos was in the apartment and was sleeping on the floor next to some marijuana. Mr. Ashley arrived 10-15 minutes later to get Roscoe, a dog that was living at the apartment, after a police officer called and told him to come get the dog. Security cameras captured the police entering the apartment, and Mr. Ashley arriving afterwards. A few minutes after Mr. Ashley entered the apartment that morning, he was handcuffed and arrested.

### b. Detective Civil Signs a Sworn Complaint He Knows Contains False Information

Seven p.m., the same day, Detective Civil spoke with someone at the Early Case Assessment Board for the Kings County District Attorney's Office ("ECAB"). He is not sure if it was a prosecutor or a paralegal. He told this person all the circumstances surrounding the search and arrest.

But when he received a draft complaint, via fax, it contained a false statement that was key to establishing the basis for prosecuting Mr. Ashley—prosecuting Mr. Ashley for Mr. Carlos' marijuana. Instead of saying that Mr. Ashley arrived later, the complaint said that "defendants," meaning Mr. Ashley and Mr. Carlos, were both sitting next to the marijuana. He knew this was false, but as he readily admitted at trial, he signed it anyway:

Q Okay. Is this the complaint report that was sent to you?

A Yes.

Q When you received it, did you read it?

A I did.

Q Did you sign it?

2

> A I did.
>
> Q And did you notice if there was any mistake in it?
>
> A I did. There was a slight discrepancy I felt that I saw in there, yes.
>
> Q What was the discrepancy that you saw?
>
> A That it says the defendants, plural, were in the room next to the marijuana.
>
> Q Okay. Was that accurate?
>
> A No, it wasn't.
>
> ***
>
> Q What was the mistake that you noticed?
>
> A Okay. That it said defendants, plural, not singular.
>
> Q Defendants, plural, as to what?
>
> A As to the location -- being in the room next to the marijuana.
>
> Q Okay. Who was that accurate for?
>
> A Just [co-defendant] Jose Carlos.

Tr. 339-340.

> Q They call you. You discuss the arrest. Then they faxed you a criminal court complaint to sign?
>
> A Correct, sir.
>
> Q You have to review that complaint and sign it if it's accurate, correct?
>
> A Correct.
>
> Q Now, in this case you admit that you realized before you signed it that it wasn't accurate, right?
>
> A That it wasn't -- I wouldn't say accurate. In that portion, that specific -- that specific portion wasn't accurate.
>
> Q Right. So you signed it even though you realized that it wasn't accurate, right?
>
> A Correct, sir.

3

Tr. 355-356.

And he never bothered to call the prosecutor to tell her that the complaint had a mistake in it; he just needed to sign it so he could be finished with the arrest:

> A Did I have to sign it?
>
> Q Yeah.
>
> A Well, in order to be done with my arrest, yes.
>
> Q Could you have called her and said, It's wrong?
>
> A I -- I could have, but I explained to her how I knew it was his room, so I thought I accurately -- you know, correctly demonstrated to her and explained to her the circumstances.
>
> Q You could have called her but you didn't, right?
>
> A No, sir.

Tr. 357.

### c. **Mr. Ashley is Prosecuted Based on the False Information**

Mr. Ashley was prosecuted, based on the complaint signed by Detective Civil, for marijuana possession. Over the course of a year, Mr. Ashley made 14 court appearances to defend the case. Eventually, Mr. Ashley's defense attorney obtained the surveillance video that proved the complaint had false information because the video showed the police arriving before Mr. Ashley; he could not have been sitting next to Mr. Carlos and the marijuana when Detective Civil first arrived. Mr. Ashley's attorney confronted the prosecution with the video, and that indictment was effectively dismissed.

In response, on April 30, 2014, the prosecution filed a superseding indictment based on all new information from Detective Civil. This superseding indictment was based on facts that did not appear on the ECAB sheet, information collected at the beginning of the case by the

4

prosecution, and did not appear in his memobook or any other police paperwork. Instead, these new facts were supported by a "fly sheet", a piece of paper that was not attached to the memobook and was instead added in later. Mr. Ashley's criminal attorney made an oral motion to dismiss the superseding complaint as facially insufficient. The criminal court judge agreed but gave the prosecution a chance to file a third complaint. The prosecution did not, and the 2013 case was dismissed and sealed pursuant to CPL § 160.50.

## ARGUMENT

**I.     DETECTIVE CIVIL SHOULD BE PRECLUDED FROM INTRODUCING EVIDENCE OF PLAINTIFF'S ARREST AND CONVICTION HISTORY.**

Mr. Ashley has no convictions within the prior ten years, and arrests or prosecutions that did not lead to a conviction do not demonstrate any propensity for untruthfulness. So none of this prior criminal history should be used to impeach him at trial.

Convictions over ten years old are not allowable for impeachment absent exceptional circumstances. *See United States v. Brown*, 606 F. Supp. 2d 306, 313 (E.D.N.Y. 2009). Minor crimes that are not punishable by imprisonment for more than one year are excluded for impeachment under Fed. R. Evid. 609(a)(1) completely, unless they are for a crime that involves dishonesty, regardless of how new or old the conviction is. *See United States v. Nichols*, 808 F.2d 660, 664 (8th Cir. 1987) (finding that "impeachment is proper only if the conviction permits imprisonment greater than one year"). And under Fed. R. Evid. 608, an arrest alone is not allowed for impeachment because "[i]t happens to the innocent as well as the guilty. Only a conviction, therefore, may be inquired about to undermine the trustworthiness of a witness." *Daniels v. Loizzo*, 986 F. Supp. 245, 252 (S.D.N.Y. 1997) (quoting *Michelson v. United States*, 335 U.S. 469, 482 (1948).

## II. THE SPRINT REPORT SHOULD BE EXCLUDED FOR ALL PURPOSES.

Defendants seek to introduce a partial summary of a 311 call, called a "sprint report," that makes some reference to drug dealing at the apartment. The proposed exhibit is attached as Exhibit A. It should be excluded under Fed. R. Evid. 401, 403, and 802 for multiple reasons. This is not an actual recording of a 311 call. There is no witness proposed who can testify it is a business record. It is also not a transcript of the call, but rather a partial summary with abbreviations, abbreviations that no proposed witness claims to have the proper experience to translate. Further, the 311 call was not part of the underlying prosecution in any way, and it does not identify Mr. Ashley at all. So it is irrelevant and prejudicial, as well as inadmissible double hearsay. And while there is sometimes a limited exception for hearsay to show the basis for probable cause, that is no grounds for admission here because probable cause is irrelevant in a due process claim like the one brought here. *See Garnett v. Undercover Officer C0039*, 838 F.3d 265, 277 (2d Cir. 2016). There is simply no basis for having this document admitted for any purpose.

## III. MR. ASHLEY AND OTHER WITNESSES SHOULD NOT BE QUESTIONED ABOUT HIS FINANCES.

During the prior trial, Mr. Ashley, and his girlfriend, were cross-examined extensively about Mr. Ashley's finances with questions designed to imply to the jury that Mr. Ashley had more money that he could explain. The clear implication was that this unexplained money meant that Mr. Ashley was a drug dealer. This line of questioning should be prohibited under Fed. R. Evid. 403 and 404 at this trial because it is unduly prejudicial and improper character evidence, attempting to establish that Mr. Ashley has a propensity to be a drug dealer. Even if there was some basis to believe that Mr. Ashley supported himself with drug money, which there is not, and even if they could prove that the marijuana at issue was his, which they cannot, this type of

6

character evidence would only be admissible if there was some connection between Mr. Ashley's finances and Mr. Carlos' marijuana, which there is not. So this line of questioning should be excluded. *See United States v. Garcia*, 291 F.3d 127, 138 (2d Cir. 2002) (excluding prior drug convictions under Fed. R. Evid. 404 as improper character evidence because the government could not connect the prior conviction to the drugs for which the defendant was being prosecuted).

### IV. EVIDENCE USED TO SUPPORT THE SEARCH WARRANT AND JUSTIFY THE SEARCH SHOULD BE EXCLUDED FOR ALL PURPOSES.

Detective Civil, and multiple other officers, executed a search warrant on the apartment, hoping to find crack cocaine. They did not find anything but Mr. Carlos' marijuana. We do not dispute that there was likely probable cause, or at least arguable probable cause, for the search, because Mr. Ashley was not even in the apartment when the search was executed. And probable cause is not relevant to a due process claim. *See Garnett v. Undercover Officer C0039*, 838 F.3d 265, 277 (2d Cir. 2016). So at most, Detective Civil should be allowed to testify that the officers had a warrant and were performing a lawful search. Any further testimony as to why the officers were there is unduly prejudicial and irrelevant, and should be excluded under Fed. R. Evid. 401 and 403.

### V. DETECTIVE CIVIL'S "FLY SHEET" IN HIS MEMOBOOK SHOULD BE EXCLUDED UNLESS HE CAN BRING IN THE ORIGINAL DOCUMENT.

Part of the evidence Detective Civil uses to support the prosecution he set in motion is a "fly sheet," a piece of paper he claims he put into his memobook, at or around the time of arrest, because he needed more space to write, even though it appears he had many pages of his memobook left to write on at the time. Given Detective Civil's other fabrication about Mr. Ashley being home when he arrived at the apartment, and the fact that the fly sheet and related

7

evidence did not even surface until long after he entered the apartment, a jury should be able to consider whether this fly sheet was a total fabrication.

Under Fed. R. Evid. 1002, commonly known as the best evidence rule, "An original writing, recording, or photograph is required in order to prove its content unless these rules or a federal statute provides otherwise." The purpose of this rule is, "is to prevent inaccuracy and fraud when attempting to prove the contents of a writing." *United States v. Yamin*, 868 F.2d 130, 134 (5th Cir. 1989). When there is a genuine question about the authenticity of the document, requiring production of the original is important because, "[it] may lack, such features as handwriting impressions, type of paper, and the like as may afford the opponent valuable means of objecting to admissibility. For example, the original may be a pasted-together version that gives an entirely different impression than a smooth photocopy." *Carroll v. LeBoeuf, Lamb, Greene & MacRae, L.L.P.*, 614 F. Supp. 2d 481, 485 (S.D.N.Y. 2009) (quoting 6 JOSEPH M. MCLAUGHLIN, WEINSTEIN'S FEDERAL EVIDENCE § 103.03[4] (2008)).

And that is what the jury should see at trial. They need to be able to see the original memobook, with this purported fly sheet, rather than a smooth photocopy.

## VI. DETECTIVE CIVIL SHOULD NOT BE ALLOWED TO FALSELY IMPLY THAT HE WILL PAY A JUDGMENT HIMSELF.

Detective Civil should be precluded under Fed. R. Evid. 403 from suggesting or implying that he will have to pay any judgment in this case. It is the City of New York's uniform and unwavering practice to indemnify damages awards for law enforcement personnel represented by the New York City Law Department. Given that the City always pays, including punitive damages, any evidence of the officers' own finances is irrelevant at best, and affirmatively misleading at worst. *See Mathie v. Fries*, 121 F.3d 808, 816 (2d Cir. 1997) ("It would be entirely inappropriate for a defendant to raise the issue of his limited financial resources if there existed

8

an indemnity agreement placing the burden of paying the award on someone else's shoulders."). Accordingly, the jury should not be influenced by misplaced sympathy or the mistaken belief that Detective Civil will pay any damages out of his own pocket.

## CONCLUSION

For the reasons stated above, the requested motions in limine should be granted

Dated: New York, New York
July 14, 2023

Rickner PLLC

By:        /s/

Rob Rickner

14 Wall Street, Suite 1603
New York, New York 10005
Phone: (212) 300-6506
Fax: (888) 390-5401
*Attorney for Plaintiff*